# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA



FILED by _____ S.D.C.
DKTG

MAY 16 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

|  |  |
|---|---|
| WENDY MILLER, individually and as Personal Representative of the Estate of DANNY MILLER; SHERI WHITLEN, individually and as Personal Representative of the Estate of MARILYN LEVINE; THEODORE HALLGREN, individually and as Personal Representative of the Estate of CLAIRE HALLGREN; GERTRUDE MARCHESE, Individually and as Personal Representative of the Estate of SALVATORE MARCHESE; and LARRY MICHAEL, individually and as Personal Representative of the Estate of MARY ANN MICHAEL,<br><br>vs.<br><br>R.J. REYNOLDS TOBACCO COMPANY, a foreign corporation; PHILLIP MORRIS, USA INC. (f/k/a Philip Morris Incorporated), a foreign corporation; LORILLARD TOBACCO COMPANY, a foreign corporation; LIGGETT GROUP LLC, (f/k/a Liggett Group, Inc., f/k/a Liggett & Myers Tobacco Company); and VECTOR GROUP LTD., INC. (f/k/a Brooke Group, Ltd.), a foreign corporation,<br><br>        Defendants. | **07 - 21274**<br>CASE NO. _____<br><br>CIV-KING<br><br><br>MAGISTRATE JUDGE GARBER |

## NOTICE OF REMOVAL

Defendant R.J. Reynolds Tobacco Company ("Reynolds"), pursuant to 28 U.S.C.

§§ 1332, 1441, and 1446 and with full reservation of defenses, hereby removes this action from

the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida to the United

States District Court for the Southern District of Florida. In support of removal, Reynolds states:

MIA#2619005.1

1.    <u>Complaint</u>.  On April 10, 2007, Plaintiffs filed a complaint for wrongful death in

the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida.  The

Complaint names five defendants – Reynolds, Philip Morris USA Inc. ("Philip Morris USA"),

Lorillard Tobacco Company ("Lorillard"), Lorillard, Inc., Liggett Group LLC ("Liggett") and

Vector Group Ltd. ("Vector").  Philip Morris USA was the first defendant served, on April 16,

2007.

2.    <u>Plaintiffs' Claims And Allegations</u>.  Plaintiffs assert wrongful death actions

against all Defendants based on counts for strict liability, fraud by concealment, conspiracy to

commit fraud, and negligence.  *See* Compl. ¶¶ 2, 46.  Plaintiffs allege that "[a]s a direct and

proximate result of smoking cigarettes manufactured and sold by one or more Defendants, each

Plaintiff's decedent suffered from one or more [enumerated] diseases and medical conditions . . .

specifically including small cell lung cancer, each of which was caused by his or her addiction to

cigarettes that contain nicotine and each . . . Plaintiff's decedent[] died as a result of the disease

or diseases."  Compl. ¶ 30.  Plaintiffs seek to recover "against each Defendant and every one of

them for damages pursuant to Florida's Wrongful Death Act including, but not limited to: (a)

funeral expenses of the decedent; (b) medical and hospital expenses of the decedent caused by

smoking Defendants' products; (c) loss of the decedent's net accumulations, which would

otherwise have been acquired; (d) each respective survivor's losses, including (1) mental and

emotional anguish, (2) medical, funeral and other expenses incurred, and (3) loss of decedent's

love, affection, support, services, protection, companionship, instruction; (e) all recoverable costs

of this action; (f) all legally recoverable interest; and (g) any other relief to which each respective

Plaintiff may be legally or equitably entitled."  Compl. ¶ 46.  Plaintiffs also allege

"alternatively," that if any defendant contends that "a decedent died of some cause unrelated to

smoking cigarettes, said decedent's Personal Representative demands . . . all survival damages pursuant to Section 46.021, Florida Statutes, which damages include all that decedents could have recovered prior to their deaths, specifically including, but not limited to: (a) lost wages and earning capacity; (b) all medical and funeral expenses incurred; (c) loss of enjoyment of life, mental anguish, and pain and suffering; (d) damages for the aggravation of any previously existing condition; (e) damages for loss of consortium and companionship; (f) all recoverable costs of this action; (g) all legally recoverable interest; and (h) any other relief to which each Personal Representative may be legally or equitably entitled." Compl. ¶ 47. Finally, Plaintiffs allege that they are "*Engle* class members" and as such "each Plaintiff is entitled to the benefit of the Phase I findings." Compl. ¶ 29.[1]

> 3.    Basis for Jurisdiction. This Court has jurisdiction over this removed action pursuant to 28 U.S.C. § 1441. This action could have been filed originally in this Court pursuant to 28 U.S.C. § 1332 because it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

> 4.    Diversity Between Plaintiffs And The Properly-Joined Defendants. There is complete diversity of citizenship between Plaintiffs and all of the properly-joined defendants. *See* 28 U.S.C. § 1332.

>> a.    Citizenship of Plaintiff Wendy Miller. As personal representative of Danny Miller's estate, Plaintiff Miller is "deemed to be a citizen only of the same state as" Danny Miller. *See* 28 U.S.C. § 1332(c)(2). The Complaint alleges that "decedent Danny Miller was a citizen and resident of the State of Florida." Compl. ¶ 3. Accordingly, Plaintiff Miller is a Florida citizen for the purpose of determining diversity jurisdiction.

---

[1] Defendants reserve the right to assert all defenses in this action, including the right to challenge whether Plaintiffs or Decedents met the criteria set forth by the Florida Supreme Court for application of the *Engle* Phase I findings, and whether those findings can or should be given preclusive effect.

    b.      <u>Citizenship of Plaintiff Sheri Whitlen</u>. As personal representative of Marilyn Levine's estate, Plaintiff Whitlen is "deemed to be a citizen only of the same state as" Marilyn Levine. *See* 28 U.S.C. § 1332(c)(2). The Complaint alleges that "decedent Marilyn Levine was a citizen and resident of Florida." Compl. ¶ 4. Accordingly, Plaintiff Whitlen is a Florida citizen for the purpose of determining diversity jurisdiction.

    c.      <u>Citizenship of Plaintiff Theodore Hallgren</u>. As personal representative of Claire Hallgren's estate, Plaintiff Hallgren is "deemed to be a citizen only of the same state as" Claire Hallgren. *See* 28 U.S.C. § 1332(c)(2). The Complaint alleges that "decedent Claire Hallgren was a citizen and resident of the State of Florida." Compl. ¶ 5. Accordingly, Plaintiff Hallgren is a Florida citizen for the purpose of determining diversity jurisdiction.

    d.      <u>Citizenship of Plaintiff Gertrude Marchese</u>. As personal representative of Salvatore Marchese's estate, Plaintiff Marchese is "deemed to be a citizen only of the same state as" Salvatore Marchese. *See* 28 U.S.C. § 1332(c)(2). The Complaint alleges that "decedent Salvatore Marchese was a citizen and resident of the State of Florida." Compl. ¶ 6. Accordingly, Plaintiff Marchese is a Florida citizen for the purpose of determining diversity jurisdiction.

    e.      <u>Citizenship of Plaintiff Larry Michael</u>. As personal representative of Mary Ann Michael's estate, Plaintiff Michael is "deemed to be a citizen only of the same state as" Mary Ann Michael. *See* 28 U.S.C. § 1332(c)(2). The Complaint alleges that "decedent Mary Ann Michael was a citizen and resident of the State of Florida." Compl. ¶ 7. Accordingly, Plaintiff Michael is a Florida citizen for the purpose of determining diversity jurisdiction.

    f.      <u>Citizenship of Defendant Reynolds</u>. Reynolds is, and was at the time this action was filed, incorporated under North Carolina law with its principal place of business in the

State of North Carolina. Reynolds therefore is a North Carolina citizen for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).[2]

       g.     <u>Citizenship of Defendant Philip Morris USA</u>. Philip Morris USA is, and was at the time this action was filed, incorporated under Virginia law with its principal place of business in the State of Virginia. Philip Morris USA therefore is a Virginia citizen for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

       h.     <u>Citizenship of Defendant Lorillard Tobacco Company</u>. Lorillard Tobacco Company is, and was at the time this action was filed, incorporated under Delaware law with its principal place of business in the State of North Carolina. Lorillard Tobacco Company therefore is a Delaware and North Carolina citizen for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

       i.     <u>Citizenship of Lorillard, Inc.</u> Lorillard, Inc. is, and was at the time this action was filed, incorporated under Delaware law with its principal place of business in Delaware. Lorillard, Inc. therefore is a Delaware citizen for purposes of federal diversity jurisdiction. See 28 U.S.C. § 1332(c)(1).[3]

       j.     <u>Citizenship of Defendant Liggett</u>. Liggett Group LLC is, and was at the time this action was filed, a limited liability company incorporated under Delaware law with its principal place of business in the State of North Carolina. Liggett therefore is a Delaware and a North Carolina citizen for purposes of federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1).

---

[2] Plaintiffs' allegation in paragraph 12 that Reynolds "is a New Jersey corporation" is incorrect. *See* R.J. Reynolds Tobacco Company's 7.1(a) Disclosure Statement (Ex. 1). Nevertheless, even if Reynolds were a New Jersey citizen, it still would be diverse from Plaintiffs, who are all Florida citizens. *See supra* ¶ 4.a to 4.e.

[3] Plaintiff's assertion that Lorillard, Inc. "is a New York corporation" (Compl. ¶ 11) is incorrect. Nevertheless, even if Lorillard, Inc. were a New York citizen, it still would be diverse from Plaintiff, a Florida citizen.

Because each Plaintiff is a Florida citizen and none of the properly-joined defendants is a Florida citizen, this civil action is between citizens of different states, and complete diversity exists pursuant to 28 U.S.C. § 1332(a).

5.    <u>Fraudulently Joined Defendant – Vector</u>.  Plaintiffs have fraudulently joined a nondiverse defendant, Vector.  Plaintiffs allege that Vector is a successor to Liggett and *Engle* defendant Brooke Group Holding Inc., that Liggett is a "mere instrumentality and alter ego of Vector," that Liggett is Vector's agent, and that Vector manufactured and distributed tobacco products throughout Florida and the United States.  Compl. ¶¶ 14-16, 18-22.

Plaintiffs' joinder of Vector in this action is fraudulent for several reasons:  (a) Plaintiffs' claims against Vector are time-barred; (b) the Florida Supreme Court authorized individual actions only against *Engle* defendants, and Vector was not a defendant in *Engle*; (c) Plaintiffs' assertions of vicarious liability through theories of successor liability, alter ego, instrumentality, and agency fail as a matter of fact and law; and (d) Vector has never sold, manufactured, or marketed any cigarette product.  Since there is no reasonable possibility of recovery against Vector in this action, Vector is fraudulently joined and its presence as a defendant neither destroys diversity nor precludes removal.  *See Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (where there is "fraudulent joinder" of a non-diverse defendant, "a federal court may appropriately assert its removal diversity jurisdiction over the case"); *Legg v. Wyeth*, 428 F.3d 1317, 1324-25 & n.5 (11th Cir. 2005) (defendant was fraudulently joined where there was no "reasonable possibility . . . that Plaintiffs can establish a cause of action" against it).

a.    <u>Plaintiffs' Claims Against Vector Are Time-Barred</u>.

Plaintiffs cannot possibly establish any claims against Vector because they are time-barred.  *See In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006) (removal is proper where limitations

period has run on claims against resident defendant); *Ritchey v. Upjohn Drug Co.*, 139 F.3d

1313, 1320 (9th Cir. 1998) (same). Specifically, Plaintiffs allege in their Complaint that "this is

an action for wrongful death pursuant to Florida's Wrongful Death Act." Compl. ¶ 2.

Accordingly, each Plaintiff's cause of action against Vector accrued on the date of his or her

decedent's death. *Fulton County Adm'r v. Sullivan*, 753 So. 2d 549, 552 (Fla. 1999) ("A cause

of action for wrongful death accrues on the date of death."). Each Plaintiff's failure to sue before

the expiration of the two-year period following his or her decedent's death is fatal to Plaintiffs'

wrongful death claims *against Vector*.[4] *See* Fla. Stat. § 95.11(4)(d) (two-year limitations period

for wrongful death actions).

Even if Plaintiffs' Complaint can be read to assert an alternative personal injury claim

under Florida's survival statute, each Plaintiff's claims against Vector are still time-barred.[5] In

personal injury suits brought pursuant to Florida's survival statute, "the proper period of

limitation . . . is the one applicable to such an action if it had been brought by the decedent,

himself, had he survived." *Levy v. Baptist Hosp. of Miami, Inc.*, 210 So. 2d 730, 731 (Fla. 3d

DCA 1968). In this case, that period is four years. Fla. Stat. § 95.11(3)(a), (e), (j), (k), and (p)

(2006). In Plaintiffs' Complaint, they admit that each decedent "suffered from one or more . . .

the diseases and medical conditions . . . caused by his or her addiction to cigarettes that contain

nicotine . . . each of which manifested during the class period" (i.e., before November 21, 1996).

Compl. ¶ 30; *see Engle*, 945 So. 2d at 1275 (holding that "the cut-off date for class membership

---

[4] *See* Florida Death Index Abstracts (Ex. 2) (providing dates of death for Claire Hallgren (11/26/95), Salvatore Marchese (5/22/04), Mary Ann Michael (4/6/96), and Danny Miller (7/25/96)); Death Certificate (Ex. 3) (Marilyn Levine died 9/30/97). This action was not filed until April 10, 2007.

[5] For removal purposes, Defendants do not challenge Plaintiffs' allegations that "this is an action for wrongful death" and that each decedent died as a proximate result of personal injuries. *See* Compl. ¶¶ 2, 46. Defendants reserve the right to challenge these assertions, and all other assertions in Plaintiffs' Complaint, in proceedings on the merits.

is November, 21, 1996"). Since this lawsuit was not filed until more than ten (10) years later, any survival claim against Vector is barred by Florida's four-year statute of limitations.[6]

> b.   Vector Is Not A Proper Defendant In *Engle* Progeny Actions.

Recognizing that the Florida Supreme Court's *Engle* opinion authorized *Engle* progeny suits against only "the [*Engle*] defendants," Plaintiffs incorrectly allege that Vector was and is a defendant in *Engle*. *See Engle*, 945 So. 2d at 1270 n.12 (authorizing suits against "the defendants"); Compl. ¶ 24 ("The Defendants, including Vector, were and remain *Engle* defendants."). In fact, Vector is *not* a defendant in *Engle* and never was. *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1256 n.3 (Fla. 2006) (listing the defendants); Aff. Marc N. Bell ¶ 2 (Ex. 4).[7] Since Vector is not and was not a defendant in *Engle*, Plaintiffs' joinder of Vector in this purported *Engle* action is fraudulent and does not defeat this Court's diversity jurisdiction.

> c.   Plaintiffs' Allegations Attempting To Link Vector To *Engle* Defendants Have No Reasonable Possibility Of Success.

In an attempt to link Vector to *Engle* defendants – to avoid the clear limitations bar – Plaintiffs allege a number of specious theories of vicarious liability. Specifically, Plaintiffs allege that Vector is a successor to Liggett and *Engle* defendant Brooke Group Holding Inc., that Liggett is a "mere instrumentality and alter ego of Vector," and that Liggett is Vector's agent. *See* Compl. ¶¶ 18-22. Every one of these theories fails as a matter of law and fact.

First, Vector is *not* a successor to Liggett or *Engle* defendant Brooke Group Holding Inc. Liggett has no successor because it still exists, is still in business, and is still available to be sued.

---

[6] The *Engle* court gave former class members one year to file individual actions against *Engle* defendants. *See Engle*, 945 So. 2d at 1270 n.12. This ruling cannot resurrect Plaintiffs' claims against Vector, however, because Vector was not a defendant in *Engle*. *See id.* at 1256 n.3 (Ex. 4).

[7] It is appropriate for the Court to consider affidavits to determine whether a resident defendant has been fraudulently joined. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) ("[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.").

CASE NO. _____

*See* Aff. Marc N. Bell ¶ 6 (Ex. 4). Florida courts *expressly reject* the imposition of successor liability under circumstances like these, where the supposed predecessor continues to exist and can still be sued. *See, e.g., Nastase v. Fla. Fish & Wildlife Conservation*, 836 So. 2d 1065, 1068 (Fla. 5th DCA 2003) (rejecting successor liability, holding that "[the putative successor] did not succeed or absorb the [putative predecessor] because [the putative predecessor] still exists"); *Viking Acoustical Corp. v. Monco Sales Corp.*, 767 So. 2d 632, 636 (Fla. 5th DCA 2000) (rejecting successor liability in part because the putative predecessor "continued its business"). Indeed, the purpose for successor liability disappears where the alleged predecessor still exists, can be sued and (as here) *has been sued. Nastase*, 836 So. 2d at 1068 n.3. *Engle* defendant Brooke Group Holding Inc. *does* have a successor, but it is not Vector; it is Liggett. *See* Aff. Marc N. Bell ¶ 6 (Ex. 4) (Brooke Group Holding Inc. merged into Liggett Group Inc., which subsequently was converted into Liggett Group LLC).

Second, Liggett is *not* an alter ego or "mere instrumentality" of Vector. *See id.* ¶ 7. Alter ego liability is impossible here, because Vector did not even exist at the time any of the decedents' claims accrued. *See id.* ¶ 3 (Vector was incorporated in 1999); Certificate of Incorporation & Certificates of Amendment (Ex. 5) (establishing that Vector was incorporated in 1999); Compl. ¶ 30 (alleging that each decedent manifested a smoking-related injury during the *Engle* class period (i.e., prior to November 21, 1996)); *Cabalceta v. Std. Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989) (applying Florida law) (recognizing that a defendant cannot be held liable under an alter ego theory of liability for "wrongs . . . which took place prior to its incorporation"). All of Plaintiffs' veil-piercing theories fail for the additional reason that Liggett was not "organized or employed to mislead creditors or to work a fraud." *See Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984). The corporate changes Plaintiffs allege

have not "misled or defraud[ed]" or "hinder[ed] or delay[ed]" the *Engle* class or Plaintiffs. *See*

Compl. ¶¶ 16, 17. The true successor to *Engle* defendants Liggett Group Inc. and Brooke Group

Holding Inc. (Liggett Group LLC) is well-known, well-capitalized, and most importantly,

*already a defendant* in *Engle* and in this case. *See* Aff. Marc N. Bell ¶ 6 (Ex. 4) ("Liggett Group

LLC today has approximately two percent of the domestic cigarette market share, had revenue of

more than $430 million in 2006 and is the fifth largest cigarette manufacturer in the United

States.").[8] These facts are directly contrary to the facts needed to pierce a subsidiary's corporate

veil. *See, e.g.*, *Estudios, Proyectos e Inversiones de Centro America, S.A. v. Swiss Bank Corp.

(Overseas) S.A.*, 507 So. 2d 1119, 1121 (Fla. 3d DCA 1987) (piercing corporate veil where

owner "secretly control[led]" subsidiary and used it to hide assets from creditors); *Wesco Mfg.,

Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1486 (11th Cir. 1987) (applying

Florida law) (piercing corporate veil of "thinly capitalized" corporation "used as a corporate

shell to defraud [the owner's] creditors").

     Finally, Plaintiffs' bald assertion that Liggett is Vector's agent is also incorrect. Liggett

has never been Vector's agent, and Vector does not hold Liggett out to be its agent. *See* Marc N.

Bell ¶ 7 (Ex. 4). Accordingly, Plaintiffs' joinder of Vector based on theories of successor

liability, agency and alter ego status is fraudulent and cannot defeat diversity or the removability

of this action.

---

[8] *Engle* defendant Brooke Group Ltd. did change its name as a result of the reorganization, but its counsel *expressly informed the Engle class counsel (and the court) of the new name* (Brooke Group Holding Inc.) shortly after the name change occurred. *See, e.g.*, Excerpt of 12/17/99 Liggett Group Inc. & Brooke Group Holding Inc.'s Motion For A Directed Verdict As To Plaintiffs Amodeo & Farnan at 1 n.1 (Ex. 6) ("As the result of corporate transactions recently completed, Brooke Group Ltd. was renamed Brooke Group Holding Inc."). Similarly, in 2006 after Brooke Group Holding Inc. merged into Liggett Group Inc. and the surviving company became Liggett Group LLC, counsel for the surviving company disclosed the change to *Engle* class counsel and to the court. *See, e.g.*, 7/14/06 Liggett's Joinder In Motion For Extension Of Time at 1 (Ex. 7) ("Liggett Group LLC formerly known as Liggett Group Inc. and Brooke Group Holding Inc.").

d.    Plaintiffs' Claims Against Vector Have No Reasonable Possibility Of
      Success Because Vector Has Never Made, Marketed, Or Sold Cigarettes.

In addition to the grounds explained above, Vector is fraudulently joined because it does

not make or sell cigarettes (and never has).  Plaintiffs' Complaint is based exclusively on product

liability claims concerning the design, manufacture, and marketing of cigarette products.  *See*

Compl. ¶¶ 1-47.  Yet, Vector is a holding company that has never manufactured, designed or

marketed any cigarette or tobacco product, and Vector is not a successor to any entity that ever

has manufactured, marketed or sold cigarettes or tobacco products.  *See supra* ¶ 6(c), at 8-9; Aff.

Marc N. Bell ¶ 2 (Ex. 4).  Since Vector never made or sold cigarette products, Plaintiffs cannot

possibly establish a cigarette products liability claim against Vector.  *See, e.g., Radiation Tech.,*

*Inc. v. Ware Constr. Co.*, 445 So. 2d 329, 331 (Fla. 1983) (discussing product liability in terms

of the "liability of a manufacturer or supplier"); *West v. Caterpillar Tractor Co.*, 336 So. 2d 80,

87 (Fla. 1976) ("In order to hold a manufacturer liable on the theory of strict liability in tort, the

user must establish the manufacturer's relationship to the product in question . . . ."); *Mahl v.*

*Dade Pipe & Plumbing Supply Co.*, 546 So. 2d 740, 740-41 (Fla. 3d DCA 1989) (affirming

summary judgment against plaintiff who could not establish that manufacturer and supplier

defendants produced or supplied the product at issue).  Since Plaintiffs plainly have no

reasonable basis for any claim against Vector and cannot possibly prove a claim against Vector

in this action, Plaintiffs' joinder of Vector in this action is fraudulent and does not defeat

diversity or removal.  *See Legg,* 428 F.3d at 1324.

6.    Amount in Controversy.  Plaintiffs' Complaint does not allege a specific amount

of damages, and Plaintiffs' counsel are unwilling to concede that the amount in controversy

CASE NO. _____

exceeds \$75,000.[9]  Defendants recognize that these facts suggest that this case may not be considered immediately removable under the Eleventh Circuit's recent decision in *Lowery v. Alabama Power Co.*, Case Nos. 06-16324 & 06-16325, 2007 U.S. App. LEXIS 8289 (11th Cir. Apr. 11, 2007).  However, the *Lowery* court's holding that actions generally *are not* removable when the complaint is silent as to the specific amount in controversy is in apparent conflict with the Eleventh Circuit's holding in *Williams v. Best Buy Co.* that actions *are* removable when the complaint is silent as to damages "if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." 269 F.3d 1316 (11th Cir. 2001) (following precedent from the Fifth and Ninth Circuits).  On May 2, 2007, the *Lowery* defendants moved for rehearing en banc, and they are expected to seek further review before the U.S. Supreme Court if rehearing is denied.

This apparent conflict between the Eleventh Circuit's decisions in *Williams* and *Lowery* places Defendants in a classic Catch-22 situation.  If Defendants follow *Williams* and remove, they risk a determination that the case was not immediately removable under *Lowery*.  If Defendants read *Lowery* broadly and do not remove, a subsequent removal attempt may be considered untimely if a court determines that the complaint was initially removable under *Williams*.  *See, e.g., Richman v. Zimmer, Inc.*, 644 F. Supp. 540, 542 (S.D. Fla. 1986) (failure to remove within initial 30 days after receiving complaint rendered later removal untimely, even though initial complaint did not state a specific damages amount, "[s]ince the defendant . . . must have known, from a fair reading of the complaint," that the amount in controversy exceeded the

---

[9] Despite somehow being able to aver that the amount in controversy exceeds the state court jurisdictional minimum (Compl. ¶ 8), Plaintiffs' counsel refuse to admit that it exceeds \$75,000.  *See* Letter from T. Fuhrman to B. Bigger, dated May 11, 2007 (Ex. 8).  Plaintiffs' counsel's strategic refusal to provide this information to Defendants, however, does not preclude this Court from questioning Plaintiffs' counsel about the value of Plaintiffs' claims and confirming that the value of these wrongful death claims brought against every major cigarette manufacturer exceeds \$75,000.  *See Lowery v. Ala. Power Co.*, Case Nos. 06-16324 & 06-16325, 2007 U.S. App. LEXIS 8289, at *90 n.75 (11th Cir. Apr. 11, 2007).

jurisdictional minimum).  Given these choices, Defendants are removing this case under

*Williams* (discussed below) in an abundance of caution because a later judicial decision altering

or even overturning *Lowery* may not re-open the removal window if Defendants do not remove

now.  *See, e.g., Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 967-71 (8th Cir. 2007)

(appellate decision authorizing new ground for removal did not constitute an "order or other

paper" to start new 30-day window for removal).  Accordingly, Defendants are filing the instant

Notice of Removal to preserve their right to ultimately have this case decided in federal court.

The only legitimate issue as to the amount in controversy is when, not if, that amount is satisfied.

If this Court determines that *Lowery* applies to this wrongful death case, Defendants respectfully

request that the jurisdictional issue be placed on hold until the fate of *Lowery* is known.

Under *Williams*, removal is proper in this case because it is "facially apparent" from

Plaintiffs' Complaint that the amount in controversy exceeds the jurisdictional requirement.  *See*

*Williams*, 269 F.3d at 1319.[10]  Plaintiffs allege that each Plaintiff's decedent suffered from one or

more of sixteen (16) serious and life-threatening diseases and medical conditions, "specifically

including small cell lung cancer."  Compl. ¶ 30.  Plaintiffs further allege that their decedents

"died as a result of the disease or diseases."  *Id.*  Accordingly, Plaintiffs seek "damages pursuant

to Florida's Wrongful Death Act," including funeral expenses, medical and hospital expenses,

loss of decedent's net accumulations, each survivor's mental and emotional anguish, and "loss of

decedent's love, affection, support, services, protection, companionship, instruction."  Compl.

¶ 30.  Based on these allegations, it is facially apparent from the Complaint that the amount in

controversy in this case exceeds this Court's jurisdictional minimum.  *See, e.g., Gebbia v. Wal-*

*Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (amount in controversy exceeding $75,000

---

[10] The *Lowery* panel did not (and could not) overrule *Williams*, and *Williams* remains good law.  *See Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision.").

jurisdictional minimum was "facially apparent" based on "alleged damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement"); *Torreblanca de Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (amount in controversy above jurisdictional minimum was "facially apparent" where complaint included wrongful death claim alleging damages for "terror in anticipation of death, loss of companionship, and funeral expenses" even though complaint "did not specify an amount of damages"); *Richman v. Zimmer, Inc.*, 644 F. Supp. 540, 542 (S.D. Fla. 1986) (Paine, J.) (action was removable when "a fair reading of the complaint in a state suit based on serious physical injuries place[d] the defendant on notice as to the substantial amount of damages involved . . . even though the plaintiff merely alleges the state court's minimum jurisdictional amount.").

In fact, if Plaintiffs' allegation of *Engle* class membership is correct (which Defendants assume for purposes of removal only), the verdicts other *Engle* class members have obtained further demonstrate the amount in controversy in this case. The *lowest* such verdict to date was for *$2,850,000.00*. *See* 6/11/02 *Lukacs* Verdict at 4 (awarding $24,500,000.00 to purported *Engle* class member John Lukacs) (Ex. 9); 4/7/00 *Engle* Verdict Form for Phase II at 16-17 (awarding $2,850,000.00, $5,831,000.00, and $4,023,000.00 to named *Engle* class members Mary Farnan, Frank Amodeo and Ralph Della Vecchia (individually and as personal representative), respectively) (Ex. 10). These *Engle* plaintiffs sued the same defendants as in this case (except Vector), alleged some of the same causes of action, relied upon the same findings as Plaintiffs rely on in this case, and sought recovery for similar alleged smoking-related injuries as in this case. *Compare* Compl. ¶ 26 (alleging that "each Plaintiff's decedent suffered from . . . small cell lung cancer" and died) *with* 6/11/02 *Lukacs* Verdict at 1-2 (Ex. 9) (damages awarded

for plaintiff's cancers) *and* 4/7/00 *Engle* Verdict Form for Phase II at 16-17 (Ex. 10) (damages awarded for plaintiffs' cancers and death). Even if one looks beyond verdicts obtained by *Engle* plaintiffs, the fact remains that no jury awarding damages in a smoking and health case has *ever* awarded a sum of less than $75,000 in damages to a prevailing plaintiff. *See* Chart of Plaintiffs' Verdicts in Individual Smoking & Health Cases (Ex. 11) (in 23 verdicts awarding damages to individual plaintiffs, awards ranged from $165,000.00 to $28 billion); *see also Butzberger v. Novartis Pharm. Corp.*, Case No. 06-80700-Civ-Ryskamp/Vitunac, 2006 U.S. Dist. LEXIS 85576, at *8 (S.D. Fla. Nov. 27, 2006) (Ryskamp, J.) (Ex. 12) (accepting defendant's argument that "$75,000 is much lower than the amounts Florida juries routinely award plaintiffs in product personal injury suits"). Based on all of these verdicts in cases involving substantially similar allegations, a fair assessment of the amount in controversy in this case easily exceeds $75,000.00. *See Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004) (Easterbrook, J.) (recognizing that "[r]emoval is proper if the defendant's estimate of the stakes is plausible").

7.      <u>Consent</u>.  All other named defendants have consented to this removal. *See* Consents (Ex. 13); Aff. Marc N. Bell ¶ 9 (Ex. 4).

8.      <u>Notice Given</u>.  Pursuant to 28 U.S.C. § 1446(d), Reynolds is filing this Notice of Removal with the state court in which the action is currently pending.

9.      <u>Removal Is Timely</u>.  Philip Morris USA was served on April 16, 2007 and no other defendant was served before then. Accordingly, this Notice of Removal is timely filed. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (thirty-day time period for removal runs from the date of formal service).

10.     <u>Pleadings And Process</u>.  As required by 28 U.S.C. § 1446(a), Reynolds has attached copies of all state court process and pleadings to this Notice of Removal as Exhibit 14.

CASE NO. _____

11.     Venue.  The United States District Court for the Southern District of Florida embraces the county in which the state court action is now pending and, therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 89(b), 1441(a).

12.     Non-Waiver of Defenses.  Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Reynolds' (or any other Defendant's) right to assert any defense or affirmative matter including, without limitation, the defenses of (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) failure to state a claim; (5) statute of limitations; (6) Plaintiffs' ineligibility for *Engle* treatment; (7) the inapplicability of the *Engle* Phase I findings; or (8) any other procedural or substantive defense available under state or federal law.

WHEREFORE, Defendant R.J. Reynolds Tobacco Company, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, removes this action from the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, to this Court.

Respectfully submitted,

_____
Benjamine Reid
Florida Bar No. 183522
Carlton Fields, P.A.
4000 Bank of America Tower
100 Southeast Second Street
Miami, FL 33131
Telephone:   (305) 530-0050
Facsimile:    (305) 530-0055
E-mail:        breid@carltonfields.com

OF COUNSEL:

Stephanie E. Parker
Florida Bar No. 0688355
John F. Yarber
Florida Bar No. 688932
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Phone: (404) 521-3939
Fax: (404) 581-8330
E-mail:  separker@jonesday.com
E-mail:  jyarber@jonesday.com

**Attorneys for Defendant**
**R.J. REYNOLDS TOBACCO COMPANY**

CASE NO. _____

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

Mail to all counsel on the attached Service List this 16th day of May, 2007.

_____
Attorney for R.J. Reynolds Tobacco Company

CASE NO. _____

## SERVICE LIST

C. Calvin Warriner, III, Esq.
David J. Sales, Esq.
SEARCY, DENNEY, SCAROLA,
BARNHART & SHIPLEY, P.A.
P.O. Drawer 3626
West Palm Beach, FL 33402
Telephone: 561/686-6300
Facsimile: 561/478-0754
(Counsel for Plaintiff Hallgren)

Howard M. Acosta, Esq.
LAW OFFICE OF HOWARD M. ACOSTA
300 First Avenue North
St. Petersburg, FL 33701
Telephone: 727/894-4469
Facsimile: 727/823-7608
(Co-Counsel for Plaintiffs Marchese and
Michael)

Kent G. Whittemore, Esq.
THE WHITTEMORE LAW GROUP, P.A.
One Beach Drive, S.E., Suite 205
St. Petersburg, FL 33701
Telephone: 727/821-8752
Facsimile: 727/821-8324
(Co-Counsel for Plaintiffs Marchese and
Michael)

Robert M. Loehr, Esq.
Brian Barr, Esq.
Matthew D. Schultz, Esq.
LEVIN, PAPANTONIO, THOMAS,
MITCHELL ECHSNER & PROCTOR P.A.
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: 850/435-7140
Facsimile: 850/436-6140
(Co-Counsel for Plaintiff Michael)

Hendrick Uiterwyk, Esq.
Stephen A. Barnes, Esq.
Dana Hoffman, Esq.
Brent Robert Bigger, Esq.
ABRAHAMSON, UITERWYK &
BARNES
900 W. Platt Street
Tampa, FL 33606
Telephone: 813/222-0500
Facsimile: 813/221-4738
(Co-Counsel for Plaintiff Miller)

James D. Clark, Esq.
Don Greiwe, Esq.
Brenda S. Fulmer, Esq.
ALLEY, CLARK, GREIWE & FULMER
701 East Washington Street
Tampa, FL 33602
Telephone: (813) 222-0977
Facsimile: (813) 224-0373
(Co-Counsel for Plaintiff Miller)

Robert W. Kelley, Esq.
Todd R. McPharlin, Esq.
KELLY UUSTAL, PLC
700 S.E. Third Avenue, Suite 300
Fort Lauderdale, Florida 33316
Telephone: 954/522-6601
Facsimile: 954/522-6608
(Counsel for Plaintiff Whitlen)

Kenneth J. Reilly, Esq.
Stacey A. Koch, Esq.
Shook, Hardy & Bacon, LLP
201 South Biscayne Blvd., Suite 2400
Miami, Florida 33131
(Counsel for Philip Morris USA Inc.,
Lorillard Tobacco Company, and Lorillard,
Inc.)

CASE NO. _____

Kelly A. Luther, Esq.
CLARKE SILVERGLATE & CAMPBELL
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Telephone: (305) 377-0700
Fax: (305) 377-3001
(Counsel for Liggett Group Inc. and Vector
Group Ltd.)

# EXHIBIT "1"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| WENDY MILLER, individually and as Personal Representative of the Estate of DANNY MILLER; SHERI WHITLEN, individually and as Personal Representative of the Estate of MARILYN LEVINE; THEODORE HALLGREN, individually and as Personal Representative of the Estate of CLAIRE HALLGREN; GERTRUDE MARCHESE, Individually and as Personal Representative of the Estate of SALVATORE MARCHESE; and LARRY MICHAEL, individually and as Personal Representative of the Estate of MARY ANN MICHAEL,<br><br>vs.<br><br>R.J. REYNOLDS TOBACCO COMPANY, a foreign corporation; PHILLIP MORRIS, USA INC. (f/k/a Philip Morris Incorporated), a foreign corporation; LORILLARD TOBACCO COMPANY, a foreign corporation; LIGGETT GROUP LLC, (f/k/a Liggett Group, Inc., f/k/a Liggett & Myers Tobacco Company); and VECTOR GROUP LTD., INC. (f/k/a Brooke Group, Ltd.), a foreign corporation,<br><br>       Defendants. | CASE NO. _____ |

## DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S
## 7.1(a) DISCLOSURE STATEMENT

Pursuant to Rule 7.1(a) of the Federal Rules of Civil Procedure, Defendant R.J. Reynolds

Tobacco Company ("Reynolds") hereby submits the following Disclosure Statement and

identifies the following parent corporations and publicly held corporations that own ten (10)

percent or more of its stock:

CASE NO. _____

Effective July 30, 2004, a transaction was completed whereby Reynolds American, Inc. ("RAI"), a newly formed entity, acquired the stock of Brown & Williamson USA, Inc. ("B&W USA"), a wholly-owned subsidiary of Brown & Williamson Tobacco Corporation that owned the assets of Brown & Williamson Tobacco Corporation's United States tobacco business. R.J. Reynolds Tobacco Company, a New Jersey corporation, was merged into B&W USA, a North Carolina corporation, which was renamed R.J. Reynolds Tobacco Company, a North Carolina corporation. Reynolds is an indirect wholly-owned subsidiary of RAI, a publicly traded corporation. As part of this transaction, Brown & Williamson Tobacco Corporation changed its name to Brown & Williamson Holdings, Inc. Brown & Williamson Holdings, Inc. owns approximately 42% of the common stock of RAI. Brown & Williamson Holdings, Inc. is an indirect, wholly-owned subsidiary of British American Tobacco, plc., a publicly traded corporation.

Respectfully submitted,

Benjamine Reid
Florida Bar No. 183522
Carlton Fields, P.A.
4000 Bank of America Tower
100 Southeast Second Street
Miami, FL 33131
Telephone:   (305) 530-0050
Facsimile:   (305) 530-0055
E-mail:   breid@carltonfields.com

CASE NO. _____

OF COUNSEL:

Stephanie E. Parker
Florida Bar No. 0688355
John F. Yarber
Florida Bar No. 688932
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
Phone: (404) 521-3939
Fax: (404) 581-8330
E-mail:  separker@jonesday.com
E-mail:  jyarber@jonesday.com

**Attorneys for Defendant**
**R.J. REYNOLDS TOBACCO COMPANY**

CASE NO. _____

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S.

Mail to all counsel on the attached Service List this 16th day of May, 2007.

_____

Attorney for R.J. Reynolds Tobacco Company

CASE NO. _____

## SERVICE LIST

C. Calvin Warriner, III, Esq.
David J. Sales, Esq.
SEARCY, DENNEY, SCAROLA,
BARNHART & SHIPLEY, P.A.
P.O. Drawer 3626
West Palm Beach, FL 33402
Telephone: 561/686-6300
Facsimile: 561/478-0754
(Counsel for Plaintiff Hallgren)

Howard M. Acosta, Esq.
LAW OFFICE OF HOWARD M. ACOSTA
300 First Avenue North
St. Petersburg, FL 33701
Telephone: 727/894-4469
Facsimile: 727/823-7608
(Co-Counsel for Plaintiffs Marchese and
Michael)

Kent G. Whittemore, Esq.
THE WHITTEMORE LAW GROUP, P.A.
One Beach Drive, S.E., Suite 205
St. Petersburg, FL 33701
Telephone: 727/821-8752
Facsimile: 727/821-8324
(Co-Counsel for Plaintiffs Marchese and
Michael)

Robert M. Loehr, Esq.
Brian Barr, Esq.
Matthew D. Schultz, Esq.
LEVIN, PAPANTONIO, THOMAS,
MITCHELL ECHSNER & PROCTOR P.A.
316 S. Baylen St., Suite 600
Pensacola, FL 32502
Telephone: 850/435-7140
Facsimile: 850/436-6140
(Co-Counsel for Plaintiff Michael)

Hendrick Uiterwyk, Esq.
Stephen A. Barnes, Esq.
Dana Hoffman, Esq.
Brent Robert Bigger, Esq.
ABRAHAMSON, UITERWYK &
BARNES
900 W. Platt Street
Tampa, FL 33606
Telephone: 813/222-0500
Facsimile: 813/221-4738
(Co-Counsel for Plaintiff Miller)

James D. Clark, Esq.
Don Greiwe, Esq.
Brenda S. Fulmer, Esq.
ALLEY, CLARK, GREIWE & FULMER
701 East Washington Street
Tampa, FL 33602
Telephone: (813) 222-0977
Facsimile: (813) 224-0373
(Co-Counsel for Plaintiff Miller)

Robert W. Kelley, Esq.
Todd R. McPharlin, Esq.
KELLY UUSTAL, PLC
700 S.E. Third Avenue, Suite 300
Fort Lauderdale, Florida 33316
Telephone: 954/522-6601
Facsimile: 954/522-6608
(Counsel for Plaintiff Whitlen)

Kenneth J. Reilly, Esq.
Stacey A. Koch, Esq.
Shook, Hardy & Bacon, LLP
201 South Biscayne Blvd., Suite 2400
Miami, Florida 33131
(Counsel for Philip Morris USA Inc.,
Lorillard Tobacco Company, Lorillard, Inc.)

Kelly A. Luther, Esq.
CLARKE SILVERGLATE & CAMPBELL
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Telephone: (305) 377-0700
Fax: (305) 377-3001
(Counsel for Liggett Group Inc. and Vector
Group Ltd.)

# EXHIBIT "2"

# Florida Death Index, 1877-1998

|  |  |
|--:|:--|
| Name: | **Claire Corinne Hallgren** |
| Death Date: | 26 Nov 1995 |
| County of Death: | Highlands |
| State of Death: | Florida |
| Age at Death: | 73 |
| Race: | White |
| Birth Date: | 7 Mar 1922 |

**Source Information:**

Ancestry.com. *Florida Death Index, 1877-1998* [database on-line]. Provo, UT, USA: The Generations Network, Inc., 2004. Original data: State of Florida. *Florida Death Index, 1877-1998.* Florida: Florida Department of Health, Office of Vital Records, 1998.

**Description:**

This index covers the death records in the State of Florida, USA, from 1936 to 1998. Most records contain a name, race, death date, death place, gender, birth date. volume number, and certificate number.

Copyright © 1998-2006, MyFamily.com Inc.

FLORIDA DEATH RECORDS

**Name:** MARCHESE, SALVATORE

**Age:** 71 YEARS OLD

**Date of Death:** 5/22/2004

**County of Residence:** BROWARD

**County of Death:** BROWARD

**State Certificate Number:** 072445

**\* \* \* \* \* \* PERSONAL INFORMATION \* \* \* \* \* \***

**Gender:** MALE

**Race:** WHITE/NON-HISPANIC

**Social Security Number:** 050-26-XXXX

**Date of Birth:** 12/15/1932

**Birthplace:** NEW YORK

**Father's Name:** MARCHESE, VINCENT

**Mother's Name:** LEONE, ANNE

**Address:** MARGATE, FL 33063

**Marital Status:** MARRIED

**Education:** SECONDARY

**\* \* \* \* \* \* DEATH-RELATED INFORMATION \* \* \* \* \* \***

**Autopsy:** NO

**Referred to Medical Examiner:** NO

**Disposition:** REMOVAL FROM STATE

**Injury Location:** FL, BROWARD COUNTY

**Hospital Status:** RESIDENCE

**Pregnancy in the Last Three Months:** NOT APPLICABLE

**U.S. Armed Forces:** YES

**Place of Death:** MARGATE

**Certifier:** M.D. OR OTHER SPECIFIED

# Florida Death Index, 1877-1998

|  |  |
|---|---|
| Name: | **Mary Ann Michael** |
| Death Date: | 6 Apr 1996 |
| County of Death: | Hillsborough |
| State of Death: | Florida |
| Age at Death: | 54 |
| Race: | White |
| Birth Date: | 22 Apr 1941 |

**Source Information:**

Ancestry.com. *Florida Death Index, 1877-1998* [database on-line]. Provo, UT, USA: The Generations Network, Inc., 2004. Original data: State of Florida. *Florida Death Index, 1877-1998.* Florida: Florida Department of Health, Office of Vital Records, 1998.

**Description:**
This index covers the death records in the State of Florida, USA, from 1936 to 1998. Most records contain a name, race, death date, death place, gender, birth date, volume number, and certificate number.

Copyright © 1998-2006, MyFamily.com Inc.

# Florida Death Index, 1877-1998

|  |  |
|---:|:---|
| Name: | **Danny L Miller** |
| Death Date: | 25 Jul 1996 |
| County of Death: | Lee |
| State of Death: | Florida |
| Age at Death: | 49 |
| Race: | White |
| Birth Date: | 3 Jan 1947 |

**Source Information:**

Ancestry.com. *Florida Death Index, 1877-1998* [database on-line]. Provo, UT, USA: The Generations Network, Inc., 2004. Original data: State of Florida. *Florida Death Index, 1877-1998*. Florida: Florida Department of Health, Office of Vital Records, 1998.

**Description:**
This index covers the death records in the State of Florida, USA, from 1936 to 1998. Most records contain a name, race, death date, death place, gender, birth date, volume number, and certificate number.

Copyright © 1998-2006, MyFamily.com Inc.

# EXHIBIT "3"

Case 1:20-cv-22471-XXX Document 1 STATE OF FLORIDA Docket 05/11/2021 Page 34 of 104

# OFFICE of VITAL STATISTICS

## CERTIFIED COPY

98-0562

### CERTIFICATE OF DEATH
### FLORIDA

TYPE OR PRINT IN PERMANENT BLACK INK

LOCAL FILE NO.

**1. DECEDENT'S NAME** — FIRST: Marilyn — MIDDLE — LAST: Levine — **7 SEX**: Female

**3. DATE OF DEATH** (Month, Day, Year): September 30, 1997 — **4. SOCIAL SECURITY NUMBER**: 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 — **5a AGE** Last Birthday (years): 70 — **5b UNDER 1 YEAR** (Months, Days) — **5c UNDER 1 Day** (Hours, Minutes)

**6 DATE OF BIRTH** (Month, Day, Year): June 8, 1927 — **7 BIRTHPLACE** (City and State or Foreign Country): Bronx, New York

**9a PLACE OF DEATH** (Check only one, see instructions on other side): Hospital — ☐ In-patient — ☐ ER/Outpatient — ☐ DOA — OTHER — ☐ Nursing Home — ☐ Residence — ☐ Other (Specify) — **9b INSIDE CITY LIMITS** (Yes or No): Yes

**9c FACILITY NAME** (If not institution give street and number): Holy Cross Hospital — **9d CITY, TOWN, OR LOCATION OF DEATH**: Fort Lauderdale — **9e COUNTY OF DEATH**: Broward

**10a DECEDENT'S USUAL OCCUPATION**: Proprietor — **10b KIND OF BUSINESS/INDUSTRY**: Designer Showroom — **11 MARITAL STATUS** = Married, Never Married, Widowed, Divorced (Specify): Widowed — **12 SURVIVING SPOUSE** (If wife give maiden name):

**13a RESIDENCE - STATE**: Florida — **13b COUNTY**: Broward — **13c CITY, TOWN, OR LOCATION**: Tamarac — **13d STREET AND NUMBER**: 7520 Granville Drive Bldg G

**14 WAS DECEDENT OF HISPANIC OR HAITIAN ORIGIN?** ☐ Yes ☐ No (Specify Haitian, No or Yes—If yes, specify Cuban, Mexican, Puerto Rican etc.): No — **15 RACE** — American Indian, Black, White, etc. (Specify): White — **16 DECEDENT'S EDUCATION**

**17 FATHER'S NAME** (First, Middle, Last): William N. Feldman — **18 MOTHER'S NAME** (First, Middle, Maiden Surname): Sophie Feldman

**19a INFORMANT'S NAME** (Type/Print): Sheri Witlen — **19b MAILING ADDRESS** (Street and Number or Rural Route Number, City or Town, State, Zip Code): 9712 Westview Drive #1117 Coral Springs, Florida 33076

**20a METHOD OF DISPOSITION**: ☒ Burial — ☐ Cremation — ☐ Removal from State — ☐ Donation — ☐ Other (Specify) — **20b PLACE OF DISPOSITION** (Name of cemetery, crematory, or other place): Star of David Memorial Gardens — **20c LOCATION** (City or Town, State): North Lauderdale, Florida

**21a SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH**: Dennis Owens md — **21b LICENSE NUMBER** (of licensee): 5091 — **21c NAME AND ADDRESS OF FACILITY**: Star of David Memorial Chapel 7701 Bailey Road, North Lauderdale, Florida

**22a** To the best of my knowledge death occurred at the time, date and place and due to the cause(s) stated. — Signature and Title: Dennis Owens md — **22b DATE SIGNED** (Mo, Day, Yr): 10-11-97 — **22c HOUR OF DEATH**: 4:00 A.M.

**23a** On the basis of examination and/or investigation, in my opinion death occurred at the time, date and place and due to the cause(s) stated. (Signature and Title): — **23b DATE SIGNED** (Mo/Day/Yr): — **23c HOUR OF DEATH**: M. — **23d MEDICAL EXAMINER'S CASE #**:

**24 NAME AND ADDRESS OF CERTIFIER** (Physician, Medical Examiner) (Type or Print): Leonard Seigel, M.D. 1960 N.E. 47th Street #105 Fort Lauderdale, Florida

**25a SUB-REGISTRAR - SIGNATURE AND DATE**: — **25b LOCAL REGISTRAR - SIGNATURE**: Dennis Owens — **25c DATE REGISTERED**: OCT 8 1997

THIS IS A CERTIFIED TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE.

OCT 0 8 1997

Dennis Owens, Chief Deputy Registrar — State Registrar

**WARNING:** THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY WATERMARKED PAPER AND CONTAINS SECURITY FIBERS. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK.

THE DOCUMENT FACE CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEALS IN THERMOCHROMIC INK.

9320180

GREAT SEAL OF THE STATE OF FLORIDA — IN GOD WE TRUST

FLORIDA DEPARTMENT OF HEALTH

HRS FORM 1564 (10-96)

CERTIFICATION OF VITAL RECORD

# EXHIBIT "4"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WENDY MILLER, individually and as
Personal Representative of the Estate of
DANNY MILLER, et al.,

        Plaintiffs

vs.

R.J. REYNOLDS TOBACCO COMPANY,
et al.,

        Defendants.

_____/

Removed from the Circuit Court of
The Eleventh Judicial Circuit, In and For
Dade County, Florida

Case No.: _____

|                         |   |     |
|-------------------------|---|-----|
| STATE OF FLORIDA        | ) |     |
|                         | ) | ss. |
| COUNTY OF MIAMI-DADE     | ) |     |

## AFFIDAVIT OF MARC N. BELL
## IN SUPPORT OF NOTICE OF REMOVAL

Marc N. Bell, an attorney duly admitted to practice law in the State of Florida, being duly sworn, hereby deposes and says:

1.     I am Vice President and General Counsel of Vector Group Ltd. ("Vector"). I submit this affidavit in support of the Notice of Removal of this action. This affidavit is made based upon my review of corporate records and my personal knowledge.

2.     Vector is a holding company that does not – and has never – sold, manufactured or marketed any cigarette or tobacco products. Vector is not a successor to any company or entity that has ever sold, manufactured or marketed cigarettes or tobacco products. Neither Vector nor any of its predecessors were defendants in *Engle, et al. v. R.J. Reynolds, et al.*, Case No. 94-08273 CA 20 (Fla. Cir. Ct. Miami-Dade County).

3.     Vector was created in 1999 as part of a reorganization that made Vector an indirect parent to *Engle* defendants Liggett Group Inc. and Brooke Group Ltd.  *See* 9/30/99 Agreement and Plan of Merger, attached as Exhibit A.

4.     Before the 1999 reorganization, Liggett Group Inc. and Brooke Group Ltd. were separate corporations, each operating as independent corporate entities, holding their respective assets and liabilities, and maintaining their own officers and directors, board meetings, books and records and corporate structure and form.  Liggett Group Inc. manufactured cigarettes and was an indirect subsidiary of Brooke Group Ltd.

5.     After the 1999 reorganization, Liggett Group Inc. and Brooke Group Ltd. continued to exist as separate corporations and continued to operate as independent corporate entities each with their own assets, liabilities, officers, directors, board meetings, books. records, corporate structure and form.  Both were completely separate and distinct from Vector (their newly formed indirect parent), and both remained as defendants in *Engle*.  Liggett Group Inc. continued to manufacture and sell cigarettes, and Brooke Group Ltd. (renamed Brooke Group Holding Inc. after the reorganization) continued as Liggett Group Inc.'s holding company parent.

6.     In October 2005, Brooke Group Holding Inc. merged into Liggett Group Inc., which converted to a limited liability company in December 2005 and is now known as Liggett Group LLC.  Liggett Group LLC remains a defendant in *Engle*.  Liggett Group LLC is a separate company from Vector, with its own officers and directors, board meetings, books and records and corporate structure and form.  Liggett Group LLC continues to manufacture and sell cigarette products, generating substantial revenues, and maintaining its own assets and liabilities. Liggett Group LLC today has approximately two percent of the domestic cigarette market share,

had revenue of more than $430 million in 2006 and is the fifth largest cigarette manufacturer in the United States.

7.      Vector has never portrayed, acted in a manner as if, or held out to the public or to others that Liggett was its agent for any purpose, including but not limited to the sale, marketing, and distribution of tobacco products.  Liggett is not, and has never been, and has never held itself out as the instrument, agent, or alter ego of Vector.

8.      Vector does not exercise "control over Liggett through the formation of Liggett Vector Brands, Inc." (Complaint ¶ 18).  Liggett Vector Brands Inc. is a separate company that provides sales and marketing services for Liggett under contract.  Liggett Vector Brands Inc. does not control Liggett, and Vector does not exercise control over Liggett through Liggett Vector Brands Inc.

9.      I am authorized to state that Liggett Group LLC consents to removal of this action to the United States District Court for the Southern District of Florida.  Vector Group Ltd. consents to removal of this action to the United States District Court for the Southern District of Florida.

_____

Marc N. Bell

SWORN TO AND SUBSCRIBED before me this ___16th___ day of

___May___, 2007, by Marc N. Bell who is personally known to me.

_____

_____

Printed Name

Notary Public, State of Florida

My commission expires: 12/13/09

- 3 -

# EXHIBIT "5"

*State of Delaware*                    PAGE  1

## *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "BGL SUCCESSOR
INC.", FILED IN THIS OFFICE ON THE SEVENTH DAY OF SEPTEMBER,
A.D. 1999, AT 2:15 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3093115   8100

991373064

AUTHENTICATION:        9957871

DATE:        09-07-99

## CERTIFICATE OF INCORPORATION

### OF

### BGL SUCCESSOR INC.

The undersigned for the purpose of organizing a corporation under the General Corporation Law of the State of Delaware (the "DGCL"), hereby certifies:

FIRST:     The name of the corporation is BGL Successor Inc. (the "Corporation").

SECOND:     The address of the Corporation's registered office in the State of Delaware is the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

THIRD:     The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

FOURTH:     The total number of shares of stock which the Corporation shall have authority to issue is one hundred (100) shares of common stock, with a par value of one cent ($.01) each.

FIFTH:     The name and mailing address of the incorporator is Richard J. Lampen, 100 S. E. Second Street, 32nd Floor, Miami, Florida 33131.

SIXTH:     A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good

faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the DGCL, or (iv) for any transaction from which the director derived any improper personal benefit. If the DGCL is amended after the date of the filing of this Certificate to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended. No repeal or modification of this Article SIXTH shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such repeal or modification.

SEVENTH: The directors shall have power to make, alter or repeal by-laws, except as may otherwise be provided in the by-laws.

EIGHTH: Elections of directors need not be written ballot, except as may otherwise be provided in the by-laws.

WITNESS my signature this 7th day of September, 1999.

Richard J. Lampen
Sole Incorporator

*State of Delaware*                PAGE   1

## *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "BGL SUCCESSOR INC.", CHANGING ITS NAME FROM "BGL SUCCESSOR INC." TO "BROOKE GROUP LTD.", FILED IN THIS OFFICE ON THE FIRST DAY OF OCTOBER, A.D. 1999, AT 10 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3093115   8100

991415665

0006513

AUTHENTICATION:

DATE:                    10-04-99

# CERTIFICATE OF AMENDMENT

## TO

## THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### BGL SUCCESSOR INC.

---

BGL Successor Inc., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

1.   The Board of Directors of the Corporation has adopted a resolution proposing and declaring advisable the following amendment to the Amended and Restated Certificate of Incorporation of the Corporation (the "Certificate of Incorporation"):

RESOLVED, that it is advisable for the Corporation's Certificate of Incorporation to be amended as follows:

Article FIRST of the Certificate of Incorporation be amended to read in its entirety as follows:

"FIRST: The name of the Corporation is Brooke Group Ltd."

2.   The Amendment of the Certificate of Incorporation effected by this Certificate was duly authorized by the written consent of the sole stockholder of the Corporation, after first having been declared advisable by the Board of Directors of the Corporation, all in accordance with the provisions of Sections 228 and 242 of the Delaware General Corporation Law.

IN WITNESS WHEREOF, BGL Successor Inc. has caused this Certificate to be signed by Richard J. Lampen, its Executive Vice President, who hereby acknowledges under penalties of perjury that the facts herein stated are true and that this Certificate is the Corporation's act and deed, this 1st day of October, 1999.

BGL SUCCESSOR INC.

By: _____
      Richard J. Lampen
      Executive Vice President



FLORIDA DEPARTMENT OF STATE
Katherine Harris
Secretary of State

October 7, 1999

C T CORPORATION SYSTEM

TALLAHASSEE, FL

Qualification documents for BROOKE GROUP LTD. INC. were filed on October 7, 1999 and assigned document number F99000005186. Please refer to this number whenever corresponding with this office.

Your corporation is now qualified and authorized to transact business in Florida as of the file date.

A corporation annual report will be due this office between January 1 and May 1 of the year following the calendar year of the file date. A Federal Employer Identification (FEI) number will be required before this report can be filed. If you do not already have an FEI number, please apply NOW with the Internal Revenue by calling 1-800-829-3676 and requesting form SS-4.

Please be aware if the corporate address changes, it is the responsibility of the corporation to notify this office.

Should you have any questions regarding this matter, please telephone (850) 487-6091, the Foreign Qualification/Tax Lien Section.

Buck Kohr
Corporate Specialist
Division of Corporations                    Letter Number: 999A00048749

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

## APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1.  Brooke Group Ltd. Inc.
    (Name of corporation; must include the word "INCORPORATED", "COMPANY", "CORPORATION" or words or abbreviations of like import in language as will clearly indicate that it is a corporation instead of a natural person or partnership if not so contained in the name at present.)

2.  Delaware
    (State or country under the law of which it is incorporated)

3.  65-0949535
    (FEI number, if applicable)

4.  September 7, 1999
    (Date of incorporation)

5.  Perpetual
    (Duration: Year corp. will cease to exist or "perpetual")

6.  Upon Filing
    (Date first transacted business in Florida.) (SEE SECTIONS 607.1501, 607.1502 and 817.155, F.S.)

7.  100 Southeast Second Street, 32nd Floor

    Miami, Florida  33131
    (Current mailing address)

    ANY LAWFUL ACTIVITY for a corporation
    (Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)

9. Name and street address of Florida registered agent: (P.O. Box or Mail Drop Box **NOT** acceptable)

    Name:   CT Corporation System

    Office Address:   1200 South Pine Island Road

    Plantation                                   , Florida.  33324
                                                       (Zip code)

10. **Registered agent's acceptance:**

*Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

(Registered agent's signature)
VICKY GOLDSTEIN
SPECIAL ASSISTANT SECRETARY

11  Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated.

12. Names and addresses of officers and/or directors  (Street address **ONLY** - P.O. Box **NOT** acceptable)

**A. DIRECTORS (Street address only - P.O. Box NOT acceptable)**

Chairman:  Bennett S. LeBow

Address:  100 Southeast Second Street, 32nd Floor, Miami, Florida 33131

Director:
~~Vice Chairman~~:  Robert J. Eide,     Aegis Capital Corp.

Address:  70 East Sunrise Highway, Suite 415, Valley Stream, NY  11581-1264

Director:  Jeffrey S. Podell, Aegis Capital Corp.

Address:  70 East Sunrise Highway, Suite 415, Valley Stream, NY  11581-1264

Director:  Jean E. Sharpe

Address:  462 Haines Road, Mt. Kisco, NY  10549-4220

**B. OFFICERS (Street address only - P.O. Box NOT acceptable)**

President:  Bennett S. LeBow

Address:  100 Southeast Second Street, 32nd Floor

Miami, Florida  33131

Executive
Vice President:  Richard J. Lampen, Brooke Group Ltd.

Address:  100 Southeast Second Street, 32nd Floor

Miami, Florida  33131

', General Counsel
and Secretary:  Marc N. Bell, Brooke Group Ltd.

Address:  100 Southeast Second Street, 32nd Floor

Miami, Florida  33131

VP, CFO
and Treasurer:  Joselynn D. Van Siclen, Brooke Group Ltd.

Address:  100 Southeast Second Street, 32nd Floor

Miami, Florida 33131

**NOTE:** If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13.  _____
(Signature of Chairman, Vice Chairman, or any officer listed in number 12 of the application)

.  Richard J. Lampen, Executive Vice President
(Typed or printed name and capacity of person signing application)

*State of Delaware*                    PAGE   1

*Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "BROOKE GROUP LTD.",
CHANGING ITS NAME FROM "BROOKE GROUP LTD." TO "VECTOR GROUP
LTD.", FILED IN THIS OFFICE ON THE TWENTY-FOURTH DAY OF MAY,
A.D. 2000, AT 2:16 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3093115   8100                                    0457866

001264396                         AUTHENTICATION:

                                      DATE:          05-24-00

# CERTIFICATE OF AMENDMENT

## TO

## THE AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### BROOKE GROUP LTD.

——————————————————

Brooke Group Ltd., a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), hereby certifies as follows:

1.    The Board of Directors of the Corporation has adopted a resolution proposing and declaring advisable the following amendment to the Amended and Restated Certificate of Incorporation of the Corporation (the "Certificate of Incorporation"):

RESOLVED, that it is advisable for the Corporation's Certificate of Incorporation to be amended as follows:

Article FIRST of the Certificate of Incorporation be amended to read in its entirety as follows:

"**FIRST**: The name of the Corporation is Vector Group Ltd."

2.    The amendment of the Certificate of Incorporation effected by this Certificate was duly authorized at the Annual Meeting of Stockholders held on May 24, 2000, by the holders of a majority of the outstanding capital stock of the Corporation entitled to vote thereon, after first having been declared advisable by the Board of Directors of the Corporation, all in accordance with the provisions of Section 242 of the Delaware General Corporation Law.

**IN WITNESS WHEREOF.** Brooke Group Ltd. has caused this Certificate to be signed by Richard J. Lampen, its Executive Vice President, who hereby acknowledges under penalties of perjury that the facts herein stated are true and that this Certificate is the Corporation's act and deed. this 24th day of May, 2000.

BROOKE GROUP LTD.

By: _____

Richard J. Lampen
Executive Vice President



## FLORIDA DEPARTMENT OF STATE
### Katherine Harris
Secretary of State

August 11, 2000

C T CORPORATION SYSTEM

TALLAHASSEE, FL

Re: Document Number F99000005186

The Amendment to the Application of a Foreign Corporation for BROOKE GROUP LTD. INC. which changed its name to VECTOR GROUP LTD. INC., a Delaware corporation authorized to transact business in Florida, was filed on August 11, 2000.

Should you have any questions regarding this matter, please telephone (850) 487-6050, the Amendment Filing Section.

Velma Shepard
Corporate Specialist
Division of Corporation          Letter Number: 900A00043509

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

# APPLICATION BY FOREIGN CORPORATION TO FILE AMENDMENT TO APPLICATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

## SECTION I (1-3 must be completed)

1. Brooke Group Ltd. Inc.

   Name of corporation as it appears within the records of the Department of State.

2. Incorporated under laws of:   Delaware

3. Date authorized to do business in Florida:   10-07-1999

## SECTION II (4-7 complete only the applicable changes)

4. If the amendment changes the name of the corporation, when was the change effected under the laws of its jurisdiction of incorporation?

   May 24, 2000

5. Name of corporation after the amendment, adding suffix "corporation," "company," "incorporated," or appropriate abbreviation, if not contained in new name of the corporation:

   Vector Group Ltd. Inc.

6. If the amendment changes the period of duration, indicate new period of duration.

   No change

7. If the amendment changes the jurisdiction of incorporation, indicate new jurisdiction.

   No change

_____          8/3/00
Signature                                 Date
Name and Title

MARC BELL VP

FL021 - CT System Online

# EXHIBIT "6"

IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION


HOWARD A. ENGLE, M.D.,et al.

        Plaintiffs,

                                     CASE NO. 94-08273 CA (22)

vs.

R.J. REYNOLDS TOBACCO CO., et al.

        Defendants.
_____/


### LIGGETT GROUP INC. AND BROOKE GROUP HOLDING INC.'S MOTION FOR A DIRECTED VERDICT AS TO PLAINTIFFS AMODEO AND FARNAN

        Pursuant to Rule 1.480 of the Florida Rules of Civil Procedure, Defendants Brooke Group Holding Inc. ("Brooke")[1] and Liggett Group Inc. ("Liggett", and together, the "Liggett Defendants") respectfully move this Court for a directed verdict, as plaintiffs Frank Amodeo and Mary Farnan have failed to put forth any evidence that would support a verdict against the Liggett Defendants on any issue in this case.[2]

_____

    [1]    As the result of corporate transactions recently completed, Brooke Group Ltd. was renamed Brooke Group Holding Inc.

    [2]    By this motion, Brooke renews its motion for directed verdict and motion to set aside the Phase I verdict against it. Further, the Liggett Defendants join in and adopt the motions for directed verdict submitted by the other defendants on this date.

SL-1719191

CASE NO.  94-08273 CA (22)

## CERTIFICATE OF SERVICE

We hereby certify that a copy of the foregoing was faxed and mailed to Susan and Stanley Rosenblatt, counsel for plaintiffs, and Dan K. Webb, Esq., as liaison counsel for defendants, and mailed to the remaining counsel on the attached service list this ____17th____ day of December 1999.

Clarke Silverglate Williams
& Montgomery

By: _____
Kelly Anne Luther

## SERVICE LIST

Susan Rosenblatt,
  Attorney at Law
Stanley M. Rosenblatt, Esq.
Law Offices of
  Stanley M. Rosenblatt, P.A.
12th Floor
Concord Building
66 West Flagler Street
Miami, Florida  33130

James T. Newsom, Esq.
Walter L. Cofer, Esq.
Gary R. Long, Esq.
Martha S. Warren,
  Attorney at Law
SHOOK, HARDY & BACON
One Kansis City Place
1200 Main Street
Kansas City, MO  64105

Dan K. Webb, Esq.
Winston & Strawn
3000 First Union
  Financial Center
200 S. Biscayne Blvd.
Miami, Florida 33131

Melvin Spaeth, Esq.
David Eggert, Esq.
ARNOLD & PORTER
555 12th Street, N.W.
Washington, DC 20004

Jose E. Martinez, Esq.
MARTINEZ & GUTIERREZ
Suite 501
Courvoisier Centre II
601 Brickell Key Drive
Miami, FL  33131-2651

Richard M. Kirby, Esq.
Jones, Day, Reavis & Pogue
3500 One Peachtree Center
303 Peachtree St., N.E.
Atlanta, GA 30308-3242

Douglas Chumbley, Esq.
R. Benjamine Reid, Esq.
Carlton Fields, et al.
100 S.E. 2nd St.
Suite 4100
Miami, FL 33131

Aaron Marks, Esq.
Kasowitz, Benson, Torres
  & Friedman
1301 Avenue of the Americas
New York, NY 10019

Edward A. Moss, Esq.
Shook, Hardy & Bacon
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami, FL 33131

Richard A. Schneider, Esq.
Michael Russ, Esq.
KING & SPALDING
191 Peachtree Street, N.E.
Atlanta, GA 30303-1763

James A. Goold, Esq.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004

Joseph M. Moodhe, Esq.
Anne Cohen, Attorney at Law
DEBEVOISE & PLIMPTON
875 Third Avenue
New York, NY  10022

Norman A. Coll, Esq.
Barry R. Davidson, Esq.
Coll Davidson Smith
  Salter & Barkett
3200 Miami Center
201 S. Biscayne Blvd.
Miami, FL 33131-2312

## SERVICE LIST

### Engle, et al. v. R.J. Reynolds, et al.

Stephen N. Zack, Esq.
Zack, Sparber, Kosnitzky,
 Spratt & Brooks, P.A.
100 S.E. Second Street
Suite 2800
Miami, Florida  33131


Richard T. Woulfe, Esq.
Bunnell, Woulfe, Kirschbaum,
Kellery & McIntyre, P.A.
Post Office Drawer 03040
888 East Las Olas Blvd.
Suite 400
Fort Lauderdale, FL  3303-0340


Anthony N. Upshaw, Esq.
Adorno & Zeder, P.A.
2601 S. Bayshore Drive
Suite 1600
Miami, Florida 33133

# EXHIBIT "7"

# IN THE SUPREME COURT OF FLORIDA

HOWARD A. ENGLE, M.D., et al.

Petitioners,

v.

LIGGETT GROUP INC., et al.

Respondents.

**NO. SC03-1856**
(L.T. Case No. 3D00-3400)

## LIGGETT'S JOINDER IN MOTION FOR EXTENSION OF TIME

Respondent LIGGETT GROUP LLC formerly known as Liggett Group Inc. and Brooke Group Holding Inc. ("Liggett"), hereby joins in the Unopposed Motion for Extension of Time to File Motion for Rehearing and/or Clarification filed by Respondent PHILLIP MORRIS USA, INC., on behalf of all respondents except Liggett ("the Motion"). For all the reasons set forth in the Motion, Liggett requests a 15-day extension of time to file a motion for rehearing and or/clarification of the Court's July 6, 2006 opinion in this appeal, and a 15-day extension for the filing of its response to any rehearing motion.

Dated this 14th day of July 2006.

Respectfully submitted,

SQUIRE SANDERS & DEMPSEY LLP
200 South Biscayne Boulevard
Suite 4000
Miami, Florida 33131-2398
Telephone: (305) 577-7037
Fax: (305) 577-7001

By: _____
Alvin B. Davis, P.A.
Florida Bar No. 218073

Kelly A. Luther, Esq.
CLARKE SILVERGLATE CAMPBELL
WILLIAMS & MONTGOMERY
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Telephone: (305) 377-0700
Fax: (305) 377-3001

Counsel for Liggett Group LLC

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail on all other counsel on the attached Service List this 14th day of July 2006.

By:_____
Alvin B. Davis, P.A.

3

**Engle, M.D., et al. v. Liggett Group, Inc. et al.,**

## Service List

Stanley M. Rosenblatt, Esq. .Susan
Rosenblatt, Esq.
STANLEY M. ROSENBLATT, P.A.
12th Floor - Concord Building 66
West Flagler Street
Miami, FL 33130
Telephone: (305) 374-6131
Fax: (305) 381-8818
(Counsel for Appellees)

James T. Newsom, Esq.
SHOOK, HARDY & BACON
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-2708/421-5547
(Co-counsel for Lorillard, Inc.,
Lorillard Tobacco Company)

Kenneth J. Reilly, Esq.
SHOOK HARDY & BACON, L.L.P.
Miami Center, Suite 2400
201 S. Biscayne Boulevard
Miami, FL 33131-4332
Telephone:. (305) 358-5171
Fax: (305) 358-7470
(Co-counsel for Lorillard, Inc.,
Lorillard Tobacco Company)

Melvin Spaeth, Esq.
David Eggert, Esq.
ARNOLD & PORTER
555 12th Street, N.W.
Washington, DC 20004
Telephone: (202) 942-5000
Fax: (202) 942-5999
(Co-counsel for Philip Morris USA
Inc.)

Robert C. Heim, Esq.
Joseph P. Archie, Esq.
DECHERT LLP
Circa Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Fax: (215) 994-3143
(Co-counsel for Philip Morris USA
Inc.)

Dan K. Webb, Esq.
Stuart Altschuler, Esq.
WINSTON & STRAWN
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
(Co-counsel for Philip Morris USA
Inc.)

SQUIRE, SANDERS & DEMPSEY L.L.P.

Norman A. Coll, Esq.
SHOOK, HARDY & BACON L.L.P.
2400 Miami Center
201 S. Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 358-5171
Fax: (305) 358-7470
(Co-counsel for Philip Morris USA
Inc.)

Stephen N. Zack, Esq.
BOLES S CHILLER & FLEXNER
100 S.E. Second Street, #2800
Miami, FL 33131
Telephone: (305) 539-8400
Fax: (305) 539-0499
(Co-counsel for Philip Morris USA
Inc.)

Arthur J. England, Jr., Esq.
David L. Ross, Esq.
Elliot H. Scherker, Esq.
GREENBERG TRAURIG
1221 Brickell Avenue
Miami, FL 33131
Telephone: (305) 579-0500
Fax: (305) 789-5373
(Co-counsel for Lorillard, Inc.,
Lorillard Tobacco Company)

James A. Goold, Esq.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044
Telephone: (202) 662-6000
Fax: (202) 778-5507/662-6291
(Co-counsel for Tobacco Institute

Renaldy J. Gutierrez, Esq.
Kathleen M. Sales, Esq.
GUTIERREZ & ASSOCIATES, P.L.
Ste 201, Courvoisier Centre II
601 Brickell Key Drive
Miami, FL 33131-2651
Telephone: (305) 577-4500
Fax: (305) 577-8690
(Co-counsel for Tobacco Institute and
Council for Tobacco Research)

James R. Johnson, Esq.
Diane G. Pulley, Esq.
JONES DAY
1420 Peachtree Street, N.E. Suite 800
Atlanta, GA 30309-3053
Telephone: (404) 521-3939
Fax: (404) 581-8330 (Co-counsel for
R.J. Reynolds Tobacco Company)

Benjamine Reid, Esq.
Wendy F. Lumish, Esq.
CARLTON FIELDS
100 S.E. 2nd St, Suite 4100
Miami, FL 33131
Telephone: (305) 530-0050
Fax: (305) 530-0055
(Co-counsel for R.J. Reynolds
Tobacco Company)

Robert H. Klonoff, Esq.
JONES, DAY, REAVIS & POGUE
51 Louisiana Avenue, N.W.
Washington, DC 20001
Telephone: (202) 879-3939
Fax: (202) 626-1700
(Co-counsel for R.J. Reynolds
Tobacco Company)

Michael Fay, Esq.
Aaron Marks, Esq.
KASOWITZ BENSON TORRES &
FRIEDMAN
1633 Broadway, 22nd Floor
New York, New York 10019-6799
Telephone: (212) 506-1700
Fax: (212) 506-1800
(Co-counsel for Liggett Group Inc.,
Brooke Group Holding Inc.)

Kelly A. Luther, Esq.
CLARKE SILVERGLATE
CAMPBELL WILLIAMS &
MONTGOMERY
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Telephone: (305) 377-0700
Fax: (305) 377-3001
(Co-counsel for Liggett Group LLC)

Gordon Smith, Esq.
Richard A. Schneider, Esq.
Barry Goheen, Esq.
KING & SPALDING
191 Peachtree Street
Atlanta, GA 30303-1763
Telephone: (404) 572-4600
Fax: (404) 572-5125
(Co-counsel for Brown & Williamson
Tobacco Corporation/The American
Tobacco Company)

Anthony N. Upshaw, Esq.
ADORNO & YOSS, P.A.
2525 Ponce de Leon Blvd., Suite 400
Miami, FL 33134
Telephone: (305) 460-1052
Fax: (305) 460-1422
(Co-counsel for Brown & Williamson
Tobacco Corporation/The American
Tobacco Company)

Joseph P. Moodhe, Esq.
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836
(Co-counsel for Council for
Tobacco Research)

P. Timothy Howard, Esq.
HOWARD & ASSOCIATES, P.A.
1471 Timberland Road, Suite 115
Tallahassee, FL 32312
Telephone: (850) 298-4455
(Counsel for Amici, Tobacco
Control Legal Consortium and
Tobacco Control Resource Center)

Tobacco Control Legal Consortium
Doug Blanke, Esq., Executive Dir.
William Mitchell College of Law
875 Summit Avenue
St. Paul, MN 55105
Telephone: (651) 290-7520

Tobacco Control Resource Center
Richard A. Daynard, Esq., Ph.D.
Northeastern Univ. School of Law
360 Huntington Avenue
117 Cushing Hall
Boston, MA 02116
Telephone: (617) 373-2026

Stephen P. Teret, Esq.
John S. Vernick, Esq.
Center for Law and the Public's Health
624 N. Broadway
Baltimore, MD 21205
(Co-counsel for Amici, American
Public Health Association, American
Medical Association, American
Academy of Pediatrics, American Heart
Association, American Lung
Association, American Legacy
Foundation, Roswell Park Cancer
Institute)

John B. Ostrow, Esq.,
John B. Ostrow, P.A.
44 W. Flagler Street, Suite 1250
Miami, FL 33130
(Co-counsel for Amici, American
Public Health Association, American
Medical Association, American
Academy of Pediatrics, American Heart
Association, American Legacy
Foundation, Roswell Park Cancer
Institute and Sylvester Comprehensive
Cancer Center/University of Miami
Hospital and Clinics, The women's
Cancer League of Greater Miami)

Richard Frankel, Esq.
(Admitted *pro hac vice*)
Trial Lawyers for Public Justice
1717 Massachusetts Ave., N.W.
Suite #800
Washington, DC 20036

Matt Myers, Esq.
Campaign for Tobacco-Free Kids
1400 Eye Street, N.W. #1200
Washington, DC 20005
Telephone: (202) 296-5469

Michael Stroud, Esq.
(Admitted pro hac vice)
American Cancer Society, Inc.
1599 Clifton Road, N.E.
Atlanta, GA 30329

Theodore J. Leopold, Esq.
Ricci-Leopold, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 684-6500
(Attorney for Trial lawyers for Public
Justice, Public Citizen, The Campaign
for Tobacco-Free Kids, and the
American Cancer Society)

Daniel J. Popeo, Esq.
David Price, Esq.
*(admitted pro hac vice)*
Washington Legal Foundation
2009 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 588-0302

Rebecca O'Dell Townsend, Esq.
The Solomon Tropp Law Group, P.A.
1881 West Kennedy Boulevard
Tampa, FL 33606-1643
Telephone: (813) 225-1818
Facsimile: (813) 225-1050
(counsel for Washington Legal
Foundation and National Association of
Manufacturers)

Roy Young, Esq.
Young Van Assenderp
225 South Adams Street
Tallahassee, FL  32302
Telephone: (850)  545-5016
(Counsel for the Chamber of
Commerce of the United States)

John H. Beisner, Esq.
John F. Niblock, Esq.
Jessica Davidson Miller, Esq.
*(Admitted pro hac vice)*
O'Melveny & Myers, LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202)383-5300
Facsimile: (202) 383-5414
(Counsel for The Chamber of
Commerce of the United States)


Robin S. Conrad, Esq.
*(Admitted pro hac vice)*
National Chamber
Litigation Center, Inc.
1615 H Street, N.W.
Washington, D.C. 20062
Telephone: (202) 463-5337
(Counsel for The Chamber of
Commerce of the United States)

# EXHIBIT "8"

LAW OFFICES OF

# HILL, WARD & HENDERSON
PROFESSIONAL ASSOCIATION

MAILING ADDRESS:
POST OFFICE BOX 2231
TAMPA, FLORIDA 33601-2231

3700 BANK OF AMERICA PLAZA
101 EAST KENNEDY BOULEVARD
TAMPA, FLORIDA 33602-5195

TELEPHONE (813) 221-3900
TELECOPIER (813) 221-2900
WWW.HWHLAW.COM

WRITER'S E-MAIL: tfuhrman@hwhlaw.com

WRITER'S DIRECT DIAL: (813) 227-8470

May 11, 2007

Brent R. Bigger, Esq.
Abrahamson, Uiterwyk & Barnes
900 W. Platt Street
Tampa, FL 33606

RE:   *Wendy Miller, individually and as Personal Representative of the Estate of Danny Miller, et al. v. R.J. Reynolds Tobacco Company, et al.,* Case No. 07-10298CA-31, 11th Judicial Circuit, Dade County, Florida

Dear Brent:

Thank you for returning my call in the above-referenced matter. As I understand your position, you and your co-counsel are unwilling to concede at this time that the amount in controversy in this action exceeds $75,000.

I look forward to speaking with you soon.

Sincerely,

HILL, WARD & HENDERSON, P.A.

Troy A. Fuhrman

TAF/mn
cc:   C. Calvin Warriner, III, Esq.
Howard M. Acosta, Esq.
Kent G. Whittemore, Esq.
Robert M. Loehr, Esq.
James D. Clark, Esq.
Robert W. Kelley, Esq.

# EXHIBIT "9"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.   01-03822 CA 23

JOHN LUKACS and YOLANDA LUKACS,

                    Plaintiffs,

v.

PHILIP MORRIS INCORPORATED et. al.,

                    Defendants.

_____/

### VERDICT

WE, THE JURY, return the following verdict:

1a. Was smoking cigarettes manufactured by Defendant Brown & Williamson Tobacco Corporation a legal cause of the Plaintiff JOHN LUKACS' tongue cancer?

YES  ✓                          NO _____

1b. Was smoking cigarettes manufactured by Defendant Liggett Group, Inc. a legal cause of the Plaintiff JOHN LUKACS' tongue cancer?

YES  ✓                          NO _____

1c. Was smoking cigarettes manufactured by Defendant Philip Morris Incorporated a legal cause of the Plaintiff JOHN LUKACS' tongue cancer?

YES  ✓                          NO _____

**Please Answer Question 2.**

LUKACS V. PHILIP MORRIS INCORPORATED
CASE NO. 01-03822
VERDICT

2a. Was smoking cigarettes manufactured by Defendant Brown & Williamson Tobacco

Corporation a legal cause of the Plaintiff JOHN LUKACS' bladder cancer?

YES __✓__                                    NO _____

2b. Was smoking cigarettes manufactured by Defendant Liggett Group, Inc. a legal cause

of the Plaintiff JOHN LUKACS' bladder cancer?

YES __✓__                                    NO _____

2c. Was smoking cigarettes manufactured by Defendant Philip Morris Incorporated a legal

cause of the Plaintiff JOHN LUKACS' bladder cancer?

YES __✓__                                    NO _____

**If you answered "NO" to every part of Questions 1 and 2, your verdict is for
the Defendants and you should proceed no further except to date and sign this
verdict form and return it to the courtroom. If your answer to any part of
Questions 1 or 2 was "YES," please answer Question 3.**

3a. Did Plaintiff JOHN LUKACS rely on a false statement of material fact made by

Defendant Brown & Williamson Tobacco Company that was a legal cause of injury or damage to

him?

YES __✓__                                    NO _____

3b. Did Plaintiff JOHN LUKACS rely on a false statement of material fact made by

Defendant Ligget Group, Inc. that was a legal cause of injury or damage to him?

YES __✓__                                    NO _____

3c. Did Plaintiff JOHN LUKACS rely on a false statement of material fact made by

2

LUKACS V. PHILIP MORRIS INCORPORATED
CASE NO. 01-03822
VERDICT

Defendant Philip Morris, Incorporated that was a legal cause of injury or damage to him?

YES ___✓___                              NO _____

### Please answer Question 4.

4.  Was there negligence or other fault on the part of Plaintiff JOHN LUKACS that was a legal cause of his injuries?

YES ___✓___        NO _____

5.  Please state the percentage of negligence or other fault, that was a legal cause of Plaintiff JOHN LUKACS' injuries, that you charge to:

Brown & Williamson Tobacco Corporation: 22.5 %

Liggett Group, Inc.:                              50. %

Philip Morris, Incorporated:                22.5 %

John Lukacs:                                        5 %

**The total of the percentages must be 100%.**

**Please answer Questions 6 and 7 concerning damages. In awarding damages, do not make any reduction on account of any negligence or other fault you may have found on the part of JOHN LUKACS. The Court after trial will make any necessary reduction.**

6.  What is the amount of any economic and noneconomic damages sustained by the Plaintiff JOHN LUKACS that was caused by his cancer? "Economic" damages are damages for the reasonable value or expense of hospitalization and medical and nursing care and treatment

3

LUKACS V. PHILIP MORRIS INCORPORATED
CASE NO. 01-03822
VERDICT

necessarily or reasonably obtained by the Plaintiff in the past or in the future. "Noneconomic"

damages are damages for pain and suffering, disability or physical impairment, disfigurement,

mental anguish, inconvenience and loss of capacity for the enjoyment of life, in the past and in the

future.

Economic Damages of JOHN LUKACS = $ 500,000.00

Noneconomic Damages of JOHN LUKACS = $ 24,500,000.00

**Please answer Question 7.**

7. What is the amount of any damages sustained by the Plaintiff YOLANDA LUKACS that was

caused by JOHN LUKACS' cancer?

Damages of YOLANDA LUKACS = $ 12,500,000.00

SO SAY WE ALL, this 11 day of June, 2002.

Linda Mazzan
FOREPERSON

4

4

# EXHIBIT "10"

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR DADE
COUNTY FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:  94-08273 CA (22)

HOWARD A. ENGLE, M.D., et al.,

    Plaintiffs,

v.

RJ REYNOLDS TOBACCO COMPANY, et al.,

    Defendants.

_____/

**FILED**

**APR 0 7 2000**

CLERK, CIRCUIT & COUNTY COURTS

## VERDICT FORM FOR PHASE II

**We, the Jury, return the following Verdict:**

### Question No. 1

[Legal Causation]

In your verdict of July 7, 1999, you found that smoking cigarettes causes some diseases including lung cancer and laryngeal (throat) cancer.

Was smoking cigarettes a legal cause of Mary Farnan's lung cancer?

Yes __✓__            No _____

Was smoking cigarettes a legal cause of Frank Amodeo's laryngeal (throat) cancer?

Yes __✓__            No _____

Was smoking cigarettes a legal cause of Angie Della Vecchia's lung cancer and death?

Yes __✓__            No _____

If your answer as to one or more of the Class Representatives, above, is "No", your verdict is for the Defendants as to that Class Representative and you should not answer any further questions as to that Class Representative. If you answered "No" to Question No. 1 for all three Class Representatives, you do not need to answer any further questions. Please sign and date the last page. If you answered "Yes" as to one or more of the Class Representatives, please answer the following questions as to that or those Class Representatives.

-1-

<u>Question No.2</u>

[Strict Liability]

You found in your Verdict of July 7, 1999 that each of the Defendant tobacco companies placed cigarettes on the market that were defective and unreasonably dangerous, both before and after July 1, 1974 (except for Brooke whose liability is limited to after July 1, 1974).

Were defective and unreasonably dangerous cigarettes placed on the market by one or more of the Defendant tobacco companies a legal cause of damage to Class Representatives Mary Farnan, and/or Frank Amodeo and/or a legal cause of death to Angie Della Vecchia, deceased?

Please answer "Yes" or "No" as to each Class Representative below.

a. Mary Farnan

Philip Morris, Incorporated                                    Yes __✓__ No _____

RJ Reynolds Tobacco Company                          Yes __✓__ No ____

Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company                     Yes __✓__ No _____

Lorillard Tobacco Company/Lorillard, Inc.          Yes __✓__ No _____

Liggett Group Inc.                                             Yes __✓__ No _____

Brooke Group Holding Inc.                                 Yes __✓__ No _____

b. Frank Amodeo

Philip Morris, Incorporated                                    Yes __✓__ No _____

RJ Reynolds Tobacco Company                          Yes __✓__ No ____

Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company                     Yes __✓__ No _____

Lorillard Tobacco Company/Lorillard, Inc.          Yes __✓__ No _____

Liggett Group Inc.                                             Yes __✓__ No _____

Brooke Group Holding Inc.                                 Yes __✓__ No _____

c. **Estate of Angie Della Vecchia, deceased**

| | |
|---|---|
| **Philip Morris, Incorporated** | Yes ✓ No ____ |
| **RJ Reynolds Tobacco Company** | Yes ✓ No ____ |
| **Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company** | Yes ✓ No ____ |
| **Lorillard Tobacco Company/Lorillard, Inc.** | Yes ✓ No ____ |
| **Liggett Group Inc.** | Yes ✓ No ____ |
| **Brooke Group Holding Inc.** | Yes ✓ No ____ |

## Question No. 3

### [Fraud and Misrepresentation]

In your July 7, 1999 Verdict you found that each of the Defendants made a false statement of a material fact, either knowing the statement was false or misleading, or being without knowledge as to its truth or falsity with the intention of misleading smokers, both before and after May 5, 1982 (except for Brooke, whose liability is limited to after May 5, 1982).

Did Class Representatives Mary Farnan, Frank Amodeo and/or Angie Della Vecchia, deceased rely on a false statement(s) of material fact that was a legal cause of damage or death to that Class Representative?

Please answer "Yes" or "No" as indicated below.

**Mary Farnan**

**Philip Morris, Incorporated**

| | | |
|---|---|---|
| before May 5, 1982 | Yes ____ | No ____ |
| after May 5, 1982 | Yes ____ | No ____ |
| Both before and after May 5, 1982 | Yes ✓ | No ____ |

**RJ Reynolds Tobacco Company**

| | | |
|---|---|---|
| before May 5, 1982 | Yes ____ | No ____ |
| after May 5, 1982 | Yes ____ | No ____ |
| Both before and after May 5, 1982 | Yes ✓ | No ____ |

**Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company**

| | | |
|---|---|---|
| before May 5, 1982 | Yes ____ | No ____ |
| after May 5, 1982 | Yes ____ | No ____ |
| Both before and after May 5, 1982 | Yes ✓ | No ____ |

**Lorillard Tobacco Company/Lorillard, Inc.**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Liggett Group Inc.**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Brooke Group Holding Inc.**
after May 5, 1982                                    Yes __✔__    No _____

**Council for Tobacco Research**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Tobacco Institute**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____


**Frank Amodeo**

**Philip Morris, Incorporated**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**RJ Reynolds Tobacco Company**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Lorillard Tobacco Company/Lorillard, Inc.**
before May 5, 1982                                   Yes _____    No _____
after May 5, 1982                                    Yes _____    No _____
Both before and after May 5, 1982                    Yes __✔__    No _____

**Council for Tobacco Research**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

**Tobacco Institute**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

<u>Question No. 4</u>.

[Fraud by Concealment]

          In your Verdict of July 7, 1999 you found that each of the Defendants concealed or omitted material information, not otherwise known or available, knowing the material was false and misleading, or failed to disclose a material fact concerning or proving the health effects and/or addictive nature of smoking cigarettes, both before and after May 5, 1982 (except for Brooke, whose liability is limited to after May 5, 1982).

          As to each of the Defendants, was that Defendant's concealment or omission a legal cause of injury to Class Representatives Mary Farnan, and/or Frank Amodeo and/or Angie Della Vecchia, deceased?

          Please answer "Yes" or "No" as indicated below.

**Mary Farnan**

     **Philip Morris, Incorporated**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

     **RJ Reynolds Tobacco Company**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

     **Brown & Williamson Tobacco Corporation,**
     **individually and as successor by merger**
     **to the American Tobacco Company**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

     **Lorillard Tobacco Company/Lorillard, Inc.**
          before May 5, 1982                              Yes _____   No _____
          after May 5, 1982                               Yes _____   No _____
          Both before and after May 5, 1982              Yes ✓   No _____

**Liggett Group Inc.**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

**Brooke Group Holing Inc.**
  after May 5, 1982        Yes __✓__ No _____

**Council for Tobacco Research**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

**Tobacco Institute**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____


**Frank Amodeo**

 **Philip Morris, Incorporated**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

 **RJ Reynolds Tobacco Company**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

 **Brown & Williamson Tobacco Corporation,**
 **individually and as successor by merger**
 **to the American Tobacco Company**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

 **Lorillard Tobacco Company/Lorillard, Inc.**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

 **Liggett Group Inc.**
  before May 5, 1982       Yes _____ No _____
  after May 5, 1982        Yes _____ No _____
  Both before and after May 5, 1982  Yes __✓__ No _____

 **Brooke Group Holding Inc.**
  after May 5, 1982        Yes __✓__ No _____

**Council for Tobacco Research**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Tobacco Institute**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____


## Angie Della Vecchia, deceased

**Philip Morris, Incorporated**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**RJ Reynolds Tobacco Company**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Brown & Williamson Tobacco Corporation,**
**individually and as successor by merger**
**to the American Tobacco Company**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Lorillard Tobacco Company/Lorillard, Inc.**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Liggett Group Inc.**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Brooke Group Holding Inc.**
    after May 5, 1982                               Yes ✓        No _____

**Council for Tobacco Research**
    before May 5, 1982                              Yes _____    No _____
    after May 5, 1982                               Yes _____    No _____
    Both before and after May 5, 1982              Yes ✓        No _____

**Tobacco Institute**
  before May 5, 1982          Yes \_\_\_\_\_    No \_\_\_\_\_
  after May 5, 1982            Yes \_\_\_\_\_    No \_\_\_\_\_
  Both before and after May 5, 1982    Yes ✓    No \_\_\_\_\_

## Question No. 5

### [Civil Conspiracy-Misrepresentation]

In your Verdict of July 7, 1999 you found that all of the Defendants entered into an agreement to misrepresent information relating to the health effects of cigarette smoking, or the addictive nature of smoking cigarettes, with the intention that smokers and members of the public rely to their detriment.

As to each of the Class Representatives below, was his or her injury legally caused by acts done in furtherance of an agreement among two or more defendants to commit an act of fraud or misrepresentation, as found in Phase One? Please answer "Yes" or "No" with reference to the periods of time before and after May 5, 1982.

**Mary Farnan**
  Before May 5, 1982          Yes \_\_\_\_\_    No \_\_\_\_\_
  After May 5, 1982           Yes \_\_\_\_\_    No \_\_\_\_\_
  Both before and after May 5, 1982    Yes ✓    No \_\_\_\_\_

**Frank Amodeo**
  Before May 5, 1982          Yes \_\_\_\_\_    No \_\_\_\_\_
  After May 5, 1982           Yes \_\_\_\_\_    No \_\_\_\_\_
  Both before and after May 5, 1982    Yes ✓    No \_\_\_\_\_

**Angie Della Vecchia, deceased**
  Before May 5, 1982          Yes \_\_\_\_\_    No \_\_\_\_\_
  After May 5, 1982           Yes \_\_\_\_\_    No \_\_\_\_\_
  Both before and after May 5, 1982    Yes ✓    No \_\_\_\_\_

## Question No. 6.

### [Civil Conspiracy-Concealment]

In your Verdict of July 7, 1999 you found that all of the Defendants entered into an agreement to conceal or omit information regarding the health effects of cigarette smoking, or the addictive nature of smoking cigarettes, with the intention that smokers and members of the public rely to their detriment.

As to each of the Class Representatives below, was his or her injury legally caused by acts done before or after May 5, 1982 in furtherance of an agreement among two or more of the defendants to commit an act of omission or concealment? Please answer "Yes" or "No" with reference to the periods of time before and after May 5, 1982.

**Mary Farnan**

| | | |
|---|---|---|
| Before May 5, 1982 | Yes _____ | No _____ |
| After May 5, 1982 | Yes_____ | No_____ |
| Both before and after May 5, 1982 | Yes ✓ | No _____ |

**Frank Amodeo**

| | | |
|---|---|---|
| Before May 5, 1982 | Yes _____ | No _____ |
| After May 5, 1982 | Yes_____ | No _____ |
| Both before and after May 5, 1982 | Yes ✓ | No _____ |

**Angie Della Vecchia, deceased**

| | | |
|---|---|---|
| Before May 5, 1982 | Yes _____ | No _____ |
| After May 5, 1982 | Yes_____ | No _____ |
| Both before and after May 5, 1982 | Yes ✓ | No _____ |

## Question No. 7.

### [Breach of Implied Warranty]

In your Verdict of July 7, 1999, you found that each of the Defendant Tobacco Companies sold or supplied cigarettes that were defective in that they were not reasonably fit for the uses intended, both before and after July 1, 1974 (except for Brooke whose liability is limited to after July 1, 1974).

As to each of the Defendants, below, please state whether the sale or supply of defective cigarettes was a legal cause of damage to Class Representatives Mary Farnan and/or Frank Amodeo and/or was a legal cause of death to Angie Della Vecchia, deceased.

Please answer "Yes" or "No" as to each Defendant, below:

**Philip Morris, Incorporated**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**RJ Reynolds Tobacco Company**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

-10-

**Lorillard Tobacco Company/Lorillard, Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Liggett Group Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Brooke Group Holding Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

## Question No. 8.

### [Breach of Express Warranty]

In your Verdict of July 7, 1999, you found that each of the Defendant tobacco companies sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said Defendant(s), either orally or in writing, both before and after July 1, 1974 (except for Brooke whose liability is limited to after July 1, 1974).

As to each of the Defendants, below, was that Defendant's breach of express warranty a legal cause of damage to Class Representatives Mary Farnan and/or Frank Amodeo and/or a legal cause of death to Angie Della Vecchia, deceased?

Please answer "Yes" or "No" as to each Defendant, below:

**Philip Morris, Incorporated**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**RJ Reynolds Tobacco Company**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

-11-

**Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Lorillard Tobacco Company/Lorillard, Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Liggett Group Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

**Brooke Group Holding Inc.**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

## Question No. 9.

### [Negligence]

In your Verdict of July 7, 1999, you found that all of the Defendant Tobacco Companies failed to exercise the degree of care which a reasonable cigarette manufacturer would exercise under like circumstances, both before and after July 1, 1969 (except for Brooke whose liability is limited to after July 1, 1969).

As to each of the Defendants, below, please state whether that Defendant's negligence was a legal cause of damage to Class Representatives Mary Farnan and/or Frank Amodeo and/or a legal cause of death to Angie Della Vecchia, deceased.

Please answer "Yes" or "No" as to each Defendant, below:

**Philip Morris, Incorporated**

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No _____ |
| Frank Amodeo | Yes ✓ | No _____ |
| Angie Della Vecchia, deceased | Yes ✓ | No _____ |

-12-

**RJ Reynolds Tobacco Company**

> Mary Farnan                              Yes ✓   No _____
> Frank Amodeo                             Yes ✓   No _____
> Angie Della Vecchia, deceased            Yes ✓   No _____

**Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company**

> Mary Farnan                              Yes ✓   No _____
> Frank Amodeo                             Yes ✓   No _____
> Angie Della Vecchia, deceased            Yes ✓   No _____

**Lorillard Tobacco Company/Lorillard, Inc.**

> Mary Farnan                              Yes ✓   No _____
> Frank Amodeo                             Yes ✓   No _____
> Angie Della Vecchia, deceased            Yes ✓   No _____

**Liggett Group Inc.**

> Mary Farnan                              Yes ✓   No _____
> Frank Amodeo                             Yes ✓   No _____
> Angie Della Vecchia, deceased            Yes ✓   No _____

**Brooke Group Holding Inc.**

> Mary Farnan                              Yes ✓   No _____
> Frank Amodeo                             Yes ✓   No _____
> Angie Della Vecchia, deceased            Yes ✓   No _____

<u>Question No. 10</u>

[Intentional Infliction of Emotional Distress]

In your Verdict of July 7, 1999, you found that the Plaintiffs had proven that all of the Defendant Tobacco Companies engaged in extreme and outrageous conduct or with reckless disregard relating to cigarettes sold or supplied to Florida smokers with the intent to inflict severe emotional distress.

As to each of the Defendants below, please state whether that Defendant's extreme and outrageous conduct was a legal cause of injury to Class Representatives Mary Farnan and/or Frank Amodeo.

Please answer "Yes" or "No" as to each Defendant, below:

-13-

**Philip Morris, Incorporated**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

**RJ Reynolds Tobacco Company**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

**Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

**Lorillard Tobacco Company/Lorillard, Inc.**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

**Liggett Group Inc.**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

**Brooke Group Holding Inc.**

        Mary Farnan                Yes ✓  No ____
        Frank Amodeo           Yes ✓  No ____

### Question No. 11

#### [Statute of Limitations]

a.   Did Frank Amodeo know, or should he have known, on or before May 5, 1990, in the exercise of reasonable care that he was addicted to smoking?

     Yes ✓            No_____

b.   Did Frank Amodeo know, or should he have known, on or before May 5, 1990, in the exercise of reasonable care that he had cancer and that there was a reasonable possibility that his cancer was caused by cigarette smoking?

     Yes ✓            No_____

-14-

## Question No. 12

### [Comparative Fault]

If your answer to Question Nos. 2, 7, 8 and/or 9 as to one or more of the Class Representatives was "Yes" as to any Defendant, please answer the following questions relating to that Class Representative.

a.     Was there fault on the part of one or more of the Class Representatives that was a legal cause of his or her damage?

Please answer "Yes" or "No" as to each Class Representative, below:

| | | |
|---|---|---|
| Mary Farnan | Yes ✓ | No ___ |
| Frank Amodeo | Yes ✓ | No ___ |
| Angie Della Vecchia, Deceased | Yes ✓ | No ___ |

b.     State the percentage of any fault which was a legal cause of damage to Class Representative Mary Farnan, that you charge to:

| | |
|---|---|
| Philip Morris, Incorporated | _5_% |
| RJ Reynolds Tobacco Company | _60_% |
| Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company | _20_% |
| Lorillard Tobacco Company/Lorillard, Inc. | _5_% |
| Liggett Group Inc. | _0_% |
| Brooke Group Holding Inc. | _0_% |
| Mary Farnan | _20_% |
| **TOTAL MUST BE** | **100%** |

c.     State the percentage of any fault which was a legal cause of damage to Class Representative Frank Amodeo that you charge to:

| | |
|---|---|
| Philip Morris, Incorporated | _20_% |
| RJ Reynolds Tobacco Company | _5_% |
| Brown & Williamson Tobacco Corporation, individually and as successor by merger to the American Tobacco Company | _50_% |

-15-

Lorillard Tobacco Company/Lorillard, Inc.              _0_ %

Liggett Group Inc.                                     _0_ %

Brooke Group Holding Inc.                              _0_ %

Frank Amodeo                                           _25_ %

                              TOTAL MUST BE      100%

d.   State the percentage of any fault which was a legal cause of damage to **Angie Della Vecchia, Deceased** that you charge to:

Philip Morris, Incorporated                            _0_ %

RJ Reynolds Tobacco Company                            _50_ %

Brown & Williamson Tobacco Corporation,
individually and as successor by merger
to the American Tobacco Company                        _35_ %

Lorillard Tobacco Company/Lorillard, Inc.              _0_ %

Liggett Group Inc.                                     _0_ %

Brooke Group Holding Inc.                              _0_ %

Angie Della Vecchia, Deceased                          _15_ %

                              TOTAL MUST BE      100%

       Your answers to Question 12(b)(c) and (d) must each total 100%, and should include a zero for any Defendant or Class Representative you found not at fault.

       If you answered "No" as to all Class Representatives and all Defendants in Questions 2 through 10, then your verdict is for the Defendants and you should not continue any further except to sign and date the Verdict Form.  If you answered "Yes" as to any Class Representative against any Defendant, in any of Questions 2 through 10, please answer Question Nos. 13 and 14 as it pertains to that or those Class Representatives.

Question No. 13

[Damages]

a.  **What is the total amount of damages sustained by Class Representative Mary Farnan?**

1.  **ECONOMIC DAMAGES** [including medical expense, hospitalization, medical care in the past or to be obtained in the future; lost earnings and lost ability to earn money in the future; loss of ability to earn money in the past and in the future; and loss of household services]

    a.$ *1,250,000*

2.  **INTANGIBLE DAMAGES** [damages incurred in the past or that will be experienced in the future, including bodily injuries, pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience and loss of capacity of the enjoyment of life]

    b.$ *1,600,000*

**Total damages of Class Representative Mary Farnan**
                  TOTAL (add lines a & b)   $ *2,850,000*

b.  **What is the total amount of damages sustained by Class Representative Frank Amodeo?**

1.  **ECONOMIC DAMAGES** [including medical expense, hospitalization, medical and nursing care in the past or to be obtained in the future; lost earnings and lost ability to earn money in the future; loss of ability to earn money in the past and in the future; and loss of household services]

    a.$ *2,081,000*

2.  **INTANGIBLE DAMAGES** [damages incurred in the past or that will be experienced in the future, including bodily injuries, pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience and loss of capacity of the enjoyment of life]

    b.$ *3,750,000*

**Total damages of Class Representative Frank Amodeo:**
                  TOTAL (add lines a & b)   $ *5,831,000*

-17-

## Question No. 14

**What is the total amount of damages sustained by the Estate of Angie Della Vecchia, deceased, and the statutory survivors, her husband Ralph Della Vecchia and her minor son James?**

> **RALPH DELLA VECCHIA** [loss of companionship, loss of protection, and mental pain and suffering, in the past and in the future]
>
> a.$ _1,500,000_

> **JAMES DELLA VECCHIA** [loss of parental companionship, instruction, guidance and mental pain and suffering, in the past and in the future]
>
> b.$ _2,000,000_

> **THE ESTATE OF ANGIE DELLA VECCHIA** [funeral expenses, medical and hospital expenses and loss of household services]
>
> c.$ _523,000_

**TOTAL (add lines a ,b & c)**     $ _4,023,000_

In determining the total amount of damages, do not make any reduction because of the comparative fault, if any, of Class Representatives Mary Farnan, Frank Amodeo and/or Angie Della Vecchia, deceased. If you found one or more of the Class Representatives at fault to any degree, the Court in entering Judgment will reduce that Class Representative's total amount of damages (100%) by the percentage of fault which you found as chargeable to the Class Representative or decedent.

**SO SAY WE ALL, this** _7th_ **day of** _April_, 2000.

# EXHIBIT "11"

## Plaintiffs' Verdicts in Individual Smoking & Health Cases

| CASE: | COURT: | CLAIM: | INJURY: | AWARD: |
|---|---|---|---|---|
| *Arnitz v. Philip Morris USA Inc.* | Circuit Court, Hillsborough County, Florida, Thirteenth Judicial Circuit, Case No. 00-4208 | Personal injury | Lung cancer, emphysema | $600,000 in compensatory damages |
| *Boeken v. Philip Morris Incorporated* | Superior Court, Los Angeles County, California, Case No. 225693 | Personal injury | Lung cancer | $5,539,127 in compensatory damages $3,000,000,000 in punitive damages |
| *Boerner v. Brown & Williamson Tobacco Corporation* | United States District Court, Eastern District, Arkansas, Case No. 98-427 | Wrongful death | Lung cancer | $4,025,000 in compensatory damages $15,000,000 in punitive damages |
| *Bullock v. Philip Morris Incorporated* | Superior Court, Los Angeles County, California, Case No. 249171 | Personal injury | Lung cancer | $850,000 in compensatory damages $28,000,000,000 in punitive damages |
| *Burton v. R.J. Reynolds Tobacco Company and The American Tobacco Company* | United States District Court, District of Kansas, Case No. 94-2202 | Personal injury | Peripheral vascular disease | $198,400 in compensatory damages $15,000,000 in punitive damages |
| *Carter v. Brown & Williamson Tobacco Corporation, as successor by merger to the American Tobacco Company* | Circuit Court, Duval County, Florida, Fourth Judicial District, Case No. 95-934 | Personal injury | Lung cancer | $500,000 in compensatory damages $250,000 for loss of consortium |

- 1 -

| Case: | Court: | Claim: | Injury: | Award: |
|---|---|---|---|---|
| Cipollone v. Liggett Group, Inc., Philip Morris Incorporated and Loew's Theatres, Inc. | United States District Court, New Jersey, Case No. 83-2864 | Wrongful death | Lung cancer | $400,000 for loss of consortium from Liggett |
| Davis v. Liggett Group, Inc. | Circuit Court, Broward County, Florida, Seventeenth Judicial Circuit, Case No. 02-18944 05 | Personal injury | Lung cancer | $542,000 in compensatory damages |
| Della Vecchia, Farnan and Amadeo v. R.J. Reynolds Tobacco Company, Philip Morris Incorporated ("Philip Morris U.S.A."), Lorillard Tobacco Company, Lorillard, Inc., The American Tobacco Company, Brown & Williamson Tobacco Corp., Liggett Group, Inc., Brooke Group, Ltd., Inc., Dosal Tobacco Corp., Council for Tobacco Research – U.S.A., Inc. and Tobacco Institute, Inc. | Circuit Court, Miami-Dade County, Florida Eleventh Judicial Circuit, Case No. 94-8273 CA (20) | Personal injury and wrongful death | *Della Vecchia:* lung cancer *Farnan:* lung cancer *Amadeo:* laryngeal cancer | Della Vecchia estate:  $523,000 in compensatory damages; $3,500,000 for loss of consortium Farnan:  $1,250,000 in compensatory damages, $1,600,000 in intangible damages Amadeo:  $2,081,000 in compensatory damages, $3,750,000 in intangible damages |
| Eastman v. Brown & Williamson Tobacco Corporation, individually and as successor by merger by to The American Tobacco Company and Philip Morris USA, Inc. | Circuit Court, Pinellas County, Florida, Sixth Judicial Circuit, Case No. 97-5968 | Personal injury | Emphysema, abdominal aortic aneurysm | $6,538,000 in compensatory damages |

- 2 -

| CASE: | COURT: | CLAIM: | INJURY: | AWARD: |
|---|---|---|---|---|
| *Figueroa-Cruz v. R.J. Reynolds Tobacco Company* | United States District Court, Puerto Rico, Case No. 00-2334 | Wrongful death | Lung cancer | $1,000,000 in compensatory damages |
| *Frankson v. Brown & Williamson Tobacco Corporation, individually and as successor by merger to The American Tobacco Company; The Tobacco Institute, Inc.; and the Council for Tobacco Research – USA, Inc.* | Supreme Court, Kings County, New York, Case No. 24915/00 | Wrongful death | Lung cancer | $350,000 in compensatory damages $20,000,000 in punitive damages |
| *Henley v. Philip Morris Incorporated* | Superior Court, San Francisco County, California, Case No. 995172 | Personal injury | Lung cancer | $1,500,000 in compensatory damages $50,000,000 in punitive damages |
| *Jones v. R.J. Reynolds Tobacco Co.* | Circuit Court, Hillsborough County, Florida, Thirteenth Judicial Circuit, Case No. 97-4966 | Wrongful death | Lung cancer | $200,000 in compensatory damages |
| *Kenyon v. R.J. Reynolds Tobacco Company* | Circuit Court, Hillsborough County, Florida, Thirteenth Judicial Circuit, Case No. 00-5401 | Personal injury | Lung cancer | $165,000 in compensatory damages |

- 3 -

| CASE: | COURT: | CLAIM: | INJURY: | AWARD: |
|---|---|---|---|---|
| *Lukacs v. Brown & Williamson Tobacco Corp., individually and as successor to The American Tobacco Company; Philip Morris Incorporated; and Liggett Group, Inc. f/k/a Liggett & Myers Tobacco Co., a subsidiary and/or d/b/a Brooke Group, Ltd., Inc.* | Circuit Court, Miami-Dade County, Florida, Eleventh Judicial Circuit, Case No. 01-3822 | Personal injury | Bladder cancer, throat cancer, oral cancer | $25,000,000 in compensatory damages $12,500,000 for loss of consortium |
| *Rose v. Brown & Williamson Tobacco Corporation, as successor in interest to American Tobacco; Philip Morris USA, Inc.; and R.J. Reynolds Tobacco Company* | Supreme Court, New York County, New York, Case No. 11996-02 | Personal injury | Lung cancer, neurological conditions | As to B&W and PM: $3,000,000 in compensatory damages, $420,000 for loss of consortium $17,100,000 in punitive damages from PM |
| *Schwarz v. Philip Morris Incorporated* | Circuit Court, Multnomah County, Oregon, Case No. 0002-1376 | Wrongful death | Lung cancer | $168,514.22 in compensatory damages $150,000,000 in punitive damages |
| *Smith v. Brown & Williamson Tobacco Corp.* | Circuit Court, Jackson County, Missouri, Case No. 03-212922 | Wrongful death | Lung cancer | $2,000,000 in compensatory damages $20,000,000 in punitive damages |
| *Thompson v. Brown & Williamson Tobacco Corporation and Philip Morris Incorporated* | Circuit Court, Jackson County, Missouri, Case No. 00-220555 | Personal injury | Laryngeal cancer | $1,593,508 in compensatory damages $500,000 for loss of consortium |

| Case: | Court: | Claim: | Injury: | Award: |
|---|---|---|---|---|
| *Whiteley v. Raybestos-Manhattan, Inc., et al.; Philip Morris, Incorporated; and R.J. Reynolds Tobacco Company* | Circuit Court, San Francisco County, California, Case No. 303184 | Personal injury / wrongful death | Lung cancer | $1,472,000 in compensatory damages<br>$250,000 for loss of consortium<br>$20,000,000 in punitive damages<br><br>*On retrial as wrongful death action:*<br>$2,466,604 in compensatory damages<br>$250,000 in punitive damages |
| *Widdick v. Brown & Williamson Tobacco Corporation, as successor to American Tobacco* | Circuit Court, Duval County, Florida, Fourth Judicial District, Case No. 97-3522 | Wrongful death | Lung cancer | $552,249 in compensatory damages<br>$450,000 in punitive damages |
| *Williams v. Philip Morris, Inc.* | Circuit Court, Multnomah County, Oregon, Case No. 9705-3957 | Wrongful death | Lung cancer | $821,485.80 in compensatory damages<br>$79,500,000 in punitive damages |

# EXHIBIT "12"

LEXSEE 2006 U.S. DIST. LEXIS 85576

**BRANDON BUTZBERGER, a minor, by and through his parent and natural guardian DAVID BUTZBERGER, Plaintiffs, v. NOVARTIS PHARM. CORPORATION, a Delaware corporation, Defendant.**

**Case No. 06-80700-CIV-RYSKAMP/VITUNAC**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

**2006 U.S. Dist. LEXIS 85576**

**November 27, 2006, Decided**

**COUNSEL:** [*1] For Brandon Butzberger, a minor, by and through his parent and natural guardian David Butzberger, Plaintiff: Larry Martin Roth, LEAD ATTORNEY, Larry Roth, Orlando, FL.

For Novartis Pharmaceuticals Corporation, a Delaware corporation, Defendant: Garth Thomas Yearick, Stacey Kim Sutton, LEAD ATTORNEYS, Carlton Fields Ward Emmanuel Smith & Cutler, West Palm Beach, FL.

**JUDGES:** Kenneth L. Ryskamp, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kenneth L. Ryskamp

**OPINION:**

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

THIS CAUSE comes before the Court pursuant to Plaintiff Brandon Butzberger's ("Plaintiff") Motion to Remand, filed August 8, 2006 **[DE 5]**. Defendant Novartis Pharmaceutical Corp. ("Defendant") responded on August 24, 2006 **[DE 10]**. Plaintiff replied on August 31, 2006 **[DE 16]**. This motion is ripe for adjudication.

**I. BACKGROUND**

In October 2002, Plaintiff visited his treating physician for the purpose of treating eczema on his body. On or about October 30, 2002, Plaintiff's treating dermatologist prescribed Elidel, a topical prescription drug for the treatment of eczema and atopic dermatitis. Plaintiff applied Elidel every day twice daily until October [*2] 2004 pursuant to Defendant's guidelines. Plaintiff gave particular attention to areas showing the most significant symptoms, particularly the legs and thighs. Plaintiff was diagnosed with liver cancer in October of 2004. In January of 2006, the FDA required a box warning on Elidel for, among other things, possible risk of cancer due to use of the product. Defendant is the designer, developer, manufacturer, tester, inspector, packager, promoter, packager, distributor and labeler of the product.

Plaintiff filed this action as a Complaint for Pure Bill of Discovery in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on June 20, 2006. Plaintiff suspects his liver cancer resulted from use of the drug, but claims he needs to determine, among other things, whether there is a cause of action and the identities of potential responsible defendants. Plaintiff also indicates that he brought the action as a Pure Bill of Discovery partly due to the potential running of the statute of limitations. Plaintiff believes that interrogatories, discovery and depositions taken under oath of various employees of Defendant and/or others will reveal evidence as to whether [*3] the product is the proximate cause of his liver cancer. Plaintiff anticipates filing a claim or claims against Defendant and/or others for negligence, strict liability and fraud. Most of the information Plaintiff seeks is, according to Plaintiff, in the care, custody and control of Defendant. Hence, Plaintiff requests an order requiring Defendant to present its employees having knowledge of the formulation,

Case 1:07-cv-21274-JLK   Document 1   Entered on FLSD Docket 05/17/2007   Page 102 of 104

Page 2
2006 U.S. Dist. LEXIS 85576, *3

design, development, manufacture, testing, inspection, packaging, safety, promotion, marketing, distribution, detailing and labeling of the product for deposition, to respond to reasonable discovery, and to permit Plaintiff to set depositions of all who may have knowledge of the subject matter.

Novartis removed this action to this Court on July 20, 2006 pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. The parties agree that diversity of citizenship exists. At issue is whether this matter should be treated as a civil action that satisfies the amount in controversy requirement. Although the Complaint for Pure Bill of Discovery does not denote an amount of damages sought, Defendant removed the action to this Court on [*4] the ground that the Complaint for Pure Bill of Discovery is essentially the first step in a personal injury action unquestionably worth more than $ 75,000. Plaintiff has moved to remand on the ground that the Complaint for Pure Bill of Discovery does not meet the amount in controversy requirement.

## II. LEGAL STANDARD

A pure bill of discovery "lies to obtain the disclosure of facts within the defendant's knowledge, or deeds or writings or other things in his custody, in aid of the prosecution or defense of an action pending or about to be commenced in some other court." Publix Supermarkets, Inc., v. Frazier, 696 So.2d 1369, 1370-71 (Fla. 4th DCA 1997) (quoting First Nat'l Bank of Miami v. Dade-Broward Co., 125 Fla. 594, 171 So. 510, 510-511 (1936)). A bill of discovery should demonstrate the following:

> The matters concerning which the discovery asked for is sought, the interest of the several parties and the subject of the inquiry, the complainant's right to have the relief prayed, its title and interest, and what the relationship of same is to the discovery claim, and that the discovery so attempted to be had is material to the complainant's rights [*5] that have been duly brought into litigation on the common-law side of the court under circumstances and entitle the complainant to a disclosure of what is necessary to maintain its own claim in that litigation, and not that of the defendant in the case.

Nat'l Bank of Miami, 171 So.2d at 511. See Kaplan v. Allen, 837 So.2d 1174, 1176 (Fla. 4th DCA 2003) (noting that a bill of discovery "may be used to identify potential defendants and theories of liability and to obtain information necessary for meeting a condition precedent to filing suit"); Northrop Grumman Corp. v. Swope, 717 So.2d 213, 213 (Fla. 5th DCA 1998) (holding that identifying potential defendants, identifying theories of liability and gaining information sufficient to determine the manner in which the accident at issue occurred is a proper use of the bill of discovery); Adventist Health System/Sun Belt, Inc. v. Hegwood, 569 So.2d 1295, 1296-97 (Fla. DCA 5th 1990) (allowing mother whose son died while hospitalized to use pure bill of discovery to learn details of her son's treatment to enable her to retain a medical expert, a necessary predicate [*6] to a medical malpractice action).

A bill of discovery may not be used "as a fishing expedition to see if causes of action exist," Publix Supermarkets, 696 So.2d at 1371, nor is the mechanism available to obtain an early look at evidence obtainable during the course of ordinary discovery. See Nat'l Car Rental v. Sanchez, 349 So.2d 829, 830 (Fla. 3rd DCA 1977). In Publix Supermarkets, petitioner, injured on the job in a forklift accident, sought pre-suit preservation of the forklift simply "to see if it was defective and could have contributed to the accident." 696 So.2d at 1371. The court deemed such a "fishing expedition" and denied the request. See also Mendez v. Cochran, 700 So.2d 46, 47 (Fla. 4th DCA 1997) (disallowing bill of discovery seeking production of allegedly surreptitiously recorded conversations to determine "whether criminal or civil statutory violations, including an invasion of... privacy rights...occurred"); Kaplan, 837 So.2d at 1175-76 (no bill of discovery allowed where estate sought copies of decedent's psychiatry records to determine whether decedent's fatal car accident resulted [*7] from psychiatric malpractice).

Florida courts treat bills of discovery as the first step in a civil action and allow such to be amended to state a cause of action at law. See Surface v. Town of Bay Harbor Islands, 625 So.2d 109, 109 (Fla. 3rd DCA 1993); Florida Rule of Civil Procedure 1.040 ("[t]here shall be one form of action to be known as 'civil action"); Perez v. Citibank, 328 F.Supp.2d 1374, 1378 (S.D. Fla. 2004) (noting that Florida courts consider bills of discovery civil actions and permitting removal of a bill of discovery

Case 1:07-cv-21274-JLK   Document 1   Entered on FLSD Docket 05/17/2007   Page 103 of 104

Page 3
2006 U.S. Dist. LEXIS 85576, *7

in part because such can be amended to add substantive causes of action); APA - Engineered Wood Ass'n v. Glens Falls Ins. Co., 94 Wn. App. 556, 562-63, 972 P.2d 937 (Wash. App. 1999) (applying Florida law), *review denied,* 989 P.2d 1136 (1999)(absent a bill of discovery mechanism "suit would simply have been the first stage in a suit seeking damages ... [Plaintiffs] could easily have amended the complaint to add a prayer for damages, if and when it deemed its discovery efforts successful. To hold that [Plaintiffs'] suit was not a suit seeking damages would accentuate the vagaries of [*8] Florida procedure, [and] exalt form over substance.").

### III. DISCUSSION

Defendant seeks removal of what it sees as a typical products liability action consisting of the claims laid out in the Pure Bill of Discovery. Defendant claims that $ 75,000 is much lower than the amounts Florida juries routinely award plaintiffs in product personal injury suits. That a complaint does not allege a specific amount of damages is no bar to removal. See Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) ("When a complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement."). Indeed, federal jurisdiction exists where plaintiffs allege personal injuries caused by prescription medications, even where, as here, they do not expressly provide and amount in controversy. See In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding amount-in-controversy requirement satisfied in pharmaceutical products liability litigation alleging personal injury where "the complaint...does [*9] not preclude recovery in excess of $ 75,000"). Federal courts also allow removal of bills of discovery that satisfy the amount in controversy requirement. For example, Dublin Worldwide Prods., Inc. v. Jam Theatricals, Ltd., 162 F. Supp. 2d 275, 277-78 (S.D.N.Y. 2001), a fraud and breach of contract action initially brought in New York state court as the procedural equivalent of a bill of discovery, was properly removed to federal court because pre-filing documents indicated the claim was worth in excess of $ 500,000.

As noted, Florida courts do not distinguish between complaints for pure bills of discovery and actions at law. Stoller v. Nissan Motor Corp., 934 F.Supp. 423, 424 (S.D. Fla. 1996), cited by Plaintiff, is not to the contrary.

Stoller relied upon Sunbeam Tel. Corp. v. Columbia Broadcasting Sys., Inc., 694 F. Supp. 889, 895 (S.D. Fla. 1988) for the proposition that "Florida has defined a subsequent action for relief based on the discovery as distinct from [a] pure bill of discovery." Unsurprisingly, Stoller held that once a bill of discovery is answered, the proceeding terminates, with any subsequent [*10] action at law constituting a separate proceeding. This interpretation of Florida law is no longer valid. Surface, a 1993 case, rejected the argument that a pure bill of discovery is a separate action that must be dismissed prior to filing of a subsequent action at law. 625 So.2d at 109. Perez, a 2004 case, relied on Surface when it allowed removal of a pure bill of discovery. 328 F.Supp.2d at 1378 (noting that "Florida courts have held that a bill of discovery is a civil action under Rule 1.040, and allow it to be amended to add statutory causes of action"). Perez ultimately allowed federal jurisdiction pursuant to the Edge Act, 12 U.S.C. § 632, but such does not change the fact that Florida courts do not distinguish between bills of discovery and civil actions. 328 F. Supp. 2d at 1378.

Plaintiff cites no authority for the proposition that a bill of discovery is separate and distinct from an ordinary civil action. Plaintiff cites an amalgamation of cases from Alabama, Massachusetts, New York, Texas and Wisconsin, but each is unavailing because each holds that a pre-suit petition for discovery is not removable [*11] because such a petition is distinct from an action at law. In Bryan v. America West Airlines, 405 F. Supp. 218, 221 (E.D.N.Y. 2005), the court remanded a pre-suit petition for a discovery order because New York law provides that such a petition is "not a civil action-it is a request for discovery, nothing more." Bryan is thus distinguishable from the present case, where the governing law states that a complaint for pure bill of discovery is a civil action. See also In re Hinote, 179 F.R.D. 335, 335-36 (S. D. Ala. 1998) ("removal statutes permit removal of a of a 'civil action' from state court to federal court" but discovery petition is "no civil action to be removed"); Barrows v. American Airlines, Inc., 164 F. Supp. 2d 179, 182 (D. Mass. 2001) (discovery petitions not removable to federal court); Mayfield-George v. Texas Rehabilitation Comm'n, 197 F.R.D. 280, 283 (M.D. Tex. 2000) (discovery petition not removable to federal court because such merely sought authorization to conduct a deposition and was not a civil action); Oshkosh Truck Corp. v. Int'l Union, 67 F.R.D. 122, 123- 24 (E.D. Wis. 1975) [*12] (holding that "the formal complaint is

the critical source of facts for the assertion of subject matter jurisdiction arising under federal law" and requiring a defendant to wait until the filing of a formal complaint before filing a notice of removal). Each of these cases is in contravention of Florida law. Perez, 328 F. Supp. 2d at 1378; Surface, 625 So.2d at 109; APA, 972 P.2d at 562-63.

The Court also doubts that a bill of discovery is an essential procedural mechanism for Plaintiff. Plaintiff claims he needs extensive pre-suit discovery to allow him to support his assertion that Elidel caused his cancer. Defendant argues that such discovery is not a necessary predicate to the filing of this action, noting that counsel for Plaintiff has filed products liability actions in two other federal courts based on the theory that Elidel causes cancer, and that each concedes an amount in controversy in excess of $ 75,000. These allegations of causation and amount in controversy must necessarily have been made following a reasonable inquiry, as counsel so alleged under threat of Rule 11 sanctions. Furthermore, Plaintiff's counsel holds himself [*13] out as a national leader in Elidel litigation and maintains the website elidellawyers.com. In an Internet publication distributed by the "Center for Medical Consumers," a representative of the firm is quoted as follows:

> Ms. Cooke-Arrington [a paralegal at the firm] said the firm has been gathering information on topical immunosuppressant drugs for three years. "Hundreds of potential claimants have contacted our firm in the last year. And many of these claims include deaths. Almost 50% of them are made on behalf of children. They involve skin cancers, as well a systemic malignancies like leukemia, Hodgkin's disease, and multiple myeloma."

Plaintiff's counsel has demonstrated his knowledge of the subject matter of this action as well as his ability to file nearly identical claims without conducting any discovery. Here, the lack of need for pre-action discovery is manifest.

The Court thus determines that the Complaint for Pure Bill of Discovery is a civil action that satisfies the amount in controversy requirement for diversity jurisdiction. Because the Complaint for Pure Bill of Discovery merely alludes to theories of negligence, strict liability and fraud, Plaintiff [*14] shall have 20 days from the date of this order to file an amended complaint that complies with Rule 8(a).

## IV. CONCLUSION

THE COURT, having considered the Motion to Remand and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that the Motion to Remand, filed August 8, 2006 [DE 5], is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Stay Requirement for Filing Scheduling Report, filed August 17, 2006 [DE 7], is DENIED AS MOOT, as the parties held a scheduling meeting and prepared their scheduling report prior to the filing of the motion to stay. Nevertheless, the parties prepared the scheduling report under the belief that this action would proceed as a bill of discovery. Since the Court has elected to treat this action as a civil action, the parties shall have 20 days from the date of this order to file an amended scheduling report. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Hearing on the Motion to Remand, filed August 31, 2006 [DE 17] is DENIED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion to Strike, filed September 1, 2006 [DE 18] is DENIED.

DONE AND ORDERED at Chambers [*15] in West Palm Beach, Florida this 27th day of November, 2006.

S/ Kenneth L. Ryskamp

UNITED STATES DISTRICT JUDGE